# Gillespie *et al. v.* Nabors *et al.*

### Bill of Injunction.

1. *The Court of Probate can sell land only for division.*—The Court of Probate has no jurisdiction to sell lands of an estate unless there be heirs or devisees among whom the land can not be equitably divided.

2. *An unborn child is not an heir within the meaning of the statute authorizing a sale of land for partition.*—A child *en ventre sa mere* is not an heir within the meaning of the statute authorizing a sale of the land of an estate for partition among the heirs. A petition, which shows that one heir is alive, and its mother pregnant by the ancestor from whom the inheritance is derived, gives the court no jurisdiction to order a sale for division among the heirs; and the sale will be void, although the child may be afterwards born alive.

3. *An unborn child exists for certain purposes beneficial to it.*—An unborn child is considered as having an existence for certain purposes beneficial to it, but the existence is conditional and imperfect, and confers no right of property until it is born alive.

4. *As a rule the acts of an infant will not operate as an estoppel en pais.* The guardian of infants can not estop them from asserting title to their land sold without authority of law, by an unauthorized receipt of the purchase-money; nor can infants, as a general rule, do any act which will amount to an *estoppel en pais*.

APPEAL from the Chancery Court of Jefferson.
Heard before the Hon. CHARLES TURNER.
The facts are contained in the opinion.

HARGROVE & LEWIS, and HEWITT & WALKER, for appellants.—1. The appellants were never divested of the title to the land in controversy. It appears from the petition itself that the allegation that the "land could not be equitably divided among the heirs," was unmeaning and nugatory. At the time the petition was filed there was only one heir— as appears from its face—and, therefore, the court could not acquire jurisdiction. The fact that the mother of the heir was pregnant, and that the child, when born, would be a posthumous child of the petitioner's intestate, would not

[Gillespie v. Nabors.]

have given the court jurisdiction to order the sale. A child *en ventre sa mere* does not become an heir until it is born alive.—1 Shars. Blacks. 208, and notes. Section 1893 of the Revised Code does not change this principle.—2 Barb. 249-52; 4 Paige Chan. 52–3; 3 Barb. Ch. Rep. 509.

2. Sections 2449, 2450 of Code of 1876, say the petition must state the names of the heirs and the places of their residence. It is clear that the proceedings in the Probate Court did not divest the appellants of their title to the land in controversy.

3. The order of the Probate Court is void; the legal title is still in the appellants, and being infants, no act of theirs, or of their guardian, or of the administrator of their father's estate, can estop them from asserting their legal title to the land.—Big. on Estoppel, 486; 38 Ill. 382; 33 Barb. S. C. Reps. 176; 5 Sanf. S. C. Reps. 228. The receipt of the purchase-money of the land by the guardian of the infants, can not divest them of their legal title.— *Whitehead v. Jones,* 56 Ala. 152.

MORGAN, LAPSLEY & NELSON, and TERRY & LANE, for appellees.

STONE, J.—" Lands of an estate may be sold by order of the Probate Court having jurisdiction of the estate, when the estate can not be equitably divided amongst the heirs or devisees."—Code of 1876, § 2449.

"If, on the hearing of the application, the facts are not proved, the same must be dismissed at the costs of the applicant, for which execution may issue against him and his sureties."—Ib. § 2459.

One of the fundamental conditions—one of the jurisdictional facts—on which this power of the Probate Court can be called into exercise, is, that there are heirs or devisees of the estate, amongst whom the lands can not be *equitably divided.* Division implies two or more claimants or recipients; and its aim and object are, that the property, when divided, shall pass into separate enjoyment. Hence, a petition for a sale of lands, which shows on its face that there is but one heir or devisee, is a nullity, because it presents a case over which the Probate Court has no jurisdiction to decree a sale.—*Pettit v. Pettit,* 32 Ala. 288, and authorities cited.

The legal title to the lands in controversy was in John S. Gillespie, father of the present appellants, at the time of his

death. At his death he left a widow, Martha S. Gillespie, and one child, James M. Gillespie, then three years old. His wife was then pregnant, and after the order of sale was obtained, under which the lands were sold, was delivered of another child, who still lives, and is named John S. Gillespie. The petition sets forth that the estate is solvent—and " further represents to your honor that the heirs of said deceased are his child, a son named James M. Gillespie, about three years of age—who is a resident of said county, and who lives with his mother, Martha S. Gillespie, the widow of said deceased, who is of full age and a resident of said county, and who is now believed to be pregnant at this time." The petition then described the lands, containing about 700 acres, and proceeded with the averment that " said lands are of unequal value, and are so situated and are of such dimensions respectively that they can not be equitably divided among said heirs."

This petition was filed by the administrator of the estate, was addressed to the probate judge of the proper county—the court took jurisdiction of the case, made the proper orders, had proof taken by deposition as in chancery causes —and granted an order to sell the land for division. The administrator proceeded, after advertisement, to sell the land, and Daniel W. Prentice became the purchaser, and obtained possession and a deed to the land. Ejectment was brought by the two heirs of Gillespie above named, to recover possession of the lands, and rents, from the heirs of Prentice. The bill in the present case was filed by the administrator and heirs of Prentice to enjoin the prosecution of said action of ejectment; and the question which meets us at the threshold, is, was the sale, made under said order of the Probate Court, void for want of proper jurisdictional averments?

We have seen above that the petition sets forth only one heir, James M. Gillespie, and the belief that there will be another, then *in ventre sa mere.* Had this unborn child such a legal existence, as that, with the other named heir, it gave the court jurisdiction to order a sale for division between the two ?

In *Marsellis v. Thalhimer,* 2 Paige, 35, the court said, " The broad and unqualified language which has been used by some of the judges, has induced the appellant's counsel to suppose the unborn child was to be considered in existence for every purpose whatever, whether for its own benefit, or that of others. . . . But it must be recollected that the existence of the infant as a real person before birth is a fic—

[Gillespie v. Nabors.]

tion of law, for the purpose of providing for and protecting
the child, in the hope and expectation that it will be born
alive, and be capable of enjoying those rights, which are thus
preserved for it in anticipation. The rule has been derived
from the civil law; . . . although by the civil law of
successions, a posthumous child was entitled to the same
rights as those born in the life-time of the decedent, it was
only on the condition that they were born alive, and under
such circumstances that the law presumed they would sur-
vive. . . . Children in the mother's womb are consid-
ered, in whatever relates to themselves, as if already born;
but children born dead, or in such an early stage of preg-
nancy as to be incapable of living, although they be not
actually dead at the time of birth, are considered as if they
had never been born or conceived."

In *Bowman v. Tallman*, 27 How. Pr. Rep. 212, 272, the
court said, " Infants unborn are not seized, hence courts can
not sell their interests, because such interests do not exist;
they can sell only interests existing."

In *Jenkins v. Freyer*, 4 Paige, 47, 53, it was said that " a
child *in ventre sa mere* at the death of the testator is consid-
ered as in *esse*, if it is afterwards born alive."

In *Harper v. Archer*, 4 Sm. & Mar. 99, 109, the court said
" it is now settled, both in England and in this country, that
from the time of conception, the infant is in *esse*, for the pur-
pose of taking any estate which is for his benefit, whether by
descent, devise, or under the statute of distribution, provided,
however, that the infant be born alive, and after such a
period of foetal existence that its continuance in life might be
reasonably expected."

In *Mason v. Jones*, 2 Barb. Sup. Ct. 229, 252, the court,
speaking of a clause in their statute, in the following lan-
guage: " Where a future estate shall be limited to heirs, or
issue, or children, posthumous children shall be entitled to
take in the same manner as if living at the death of their
parent," employed the following emphatic words: " Here
then is a complete annihilation, in law, of the time that may
elapse between the death of a father, and the birth of a pre-
viously begotten child. The instant such child is born, it is
made to step back to the end of the father's life, there to take
its stand, and become clothed with all the rights of property
previously conferred."—See also *Howe v. Van Schaick*, 3
Barb. Ch. 488, 508; 1 Shars. Blacks. 130, and note.

From the citations above, it results that although an unborn
child is treated as having an existence for certain purposes

[Gillespie v. Nabors.]

beneficial to it, yet, this existence is conditional and imperfect, and confers no rights of property, until it is born alive. When that event happens, to preserve successions, and to prevent forfeitures, it becomes, by relation and legal fiction, a separate, individual person having personal and property rights, dating back to the time of conception, when such backward step is necessary to protect a descent or devise. If, however, the fœtus is never born alive, then it is treated as if it never had an existence.

Under the facts of this case, we feel compelled to hold that at the time the order of sale was petitioned for and obtained, Mr. Gillespie, the intestate ancestor, had but one heir-at-law— James M. Gillespie; and that the petition was fatally wanting in necessary averments to give the Probate Court jurisdiction. The legal title, then, was not divested by the sale and conveyance, but still remains in the heirs of John S. Gillespie.

It is contended, however, by the appellees—heirs of Prentice—that the Gillespie heirs are estopped from asserting their legal title, by reason that James McAdory, their guardian, received the purchase-money of the lands, and invested it for their benefit.

When the purchase-money was received by the guardian in 1863—the heirs were infants of very tender years; about seven and four years old. They were infants during all this litigation, and one of them is still an infant. The eldest attained his majority during the year 1877. The investment for the alleged benefit of the wards, was an investment of Confederate treasury-notes, in which the collection was made, in Confederate bonds, which perished with the downfall of the Confederate struggle. So, the investment has not benefited the wards, and they do not appear to have had any enjoyment of it. No act of ratification by them is proved; and when their suit was brought, they were infants, incapable of ratifying an unauthorized sale of their lands.

Nor could their guardian estop them, by an unauthorized receipt of the purchase-money of their land, sold without authority of law. To hold the wards estopped by such receipt, would lead to all the mischiefs of private, unauthorized sales of lands held, or controlled in trust, against which our statutes have so sedulously guarded the interests of persons not *sui juris*. Infants, as a rule, can do no act which will amount to an estoppel *en pais*.—Herman, Estop. 237, 313; Bigelow on Estop. 486–7; *Brown v. McCum*, 5 Sandf. Sup. 224; *Schnell v. Chicago*, 38 Ill. 382. See also *Franklin v. Gantt*, 12 Ala. 298.

The point first above considered is one of purely legal cognizance, and presents no question for equitable interfer-·ence. The last point is not well taken, and does not furnish the constituents of an estoppel.

Nor is there any thing in the argument based on the ·clauses of the elder McAdory's will, in which he provided that on a contingency therein named, the Gillespie heirs should forfeit the legacies he gave them. There was no attempt, by the suit for the recovery of the land, to hold the administrator of the Gillespie estate, or the guardian of the minor heirs, accountable for the conduct of their respective ·trusts.

The decree of the chancellor is reversed—and this court proceeding to render the decree which the chancellor should have rendered, doth order and decree that the bill in this cause be, and the same is hereby dismissed, at the costs of complainants therein, incurred in the court below and in this court; and the injunction therein granted is dissolved.