# HAMILTON *v.* RATHBONE.

MARRIED WOMEN; PRESUMPTION OF DEATH; EJECTMENT; EQUI-
TABLE ESTOPPEL.

1. The conveyance of land by a husband to his wife through a
   third person as intermediary, where no consideration passes
   from either grantor to his grantee, is presumptively a gift or
   conveyance from the husband within the meaning of the
   Married Woman's Act (R. S. D. C., Secs. 729, 730), and its
   effect will not be changed by the fact of small amounts of money
   being subsequently given by the wife to the husband to aid in
   paying for a building erected on the land so conveyed.
2. Where a party has been absent seven years without having been
   heard of, the presumption is that he is then dead, though there
   is no presumption as to the time when he died.
3. When an executor has illegally sold and conveyed the land of an
   infant, the infant, in an action of ejectment against the pur-
   chaser brought after attaining her majority, will not be held
   equitably estopped to assert title to the land because during
   her infancy a portion of the proceeds of sale was expended for
   her board and clothing by the executor and she accepted an
   article of apparel of insignificant value from him after attain-
   ing her majority.

No. 554.  Submitted April 23, 1896.  Decided June 1, 1896.

HEARING on an appeal by the defendant from a judg-
ment on a verdict directed by the court in an action of eject-
ment.  *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. A. S. Worthington, Mr. A. A. Lipscomb* and *Mr. Philip
Walker* for the appellants:

1. The testimony of persons who would not be apt to
have correspondence with the absent party, that they have
not heard from him for a period of seven years should have
but little weight. *Smith* v. *Smith,* 49 Ala. 156.  The pre-
sumption of death at end of term of seven years' absence

arises only where there is a failure to hear from him by persons, who, if he had been alive, would naturally have heard from him. Lawson on Presumptive Evidence, 200. A person who has left a place where he has resided is not presumed dead because not heard from there. *McCartee* v. *Carnel,* 1 Barb. Ch. 463; *Grey* v. *McDowell,* 6 Bush, 482; *Re Creed,* 1 Bewry, 235.

A presumption of law arises only upon established facts. The facts in this case upon which to rest a presumption of death were not so clearly established as to make it unnecessary to submit them to the jury for determination, and therefore the court erred in directing the jury to find for the plaintiff.

2. The appellant claims that the court below erred in taking away from the jury the consideration of the question of fact as to whether or not the plaintiff had knowingly received from the executor a part of the proceeds of the sale of the property paid to her by the appellant during both her infancy and majority, and the questions of fact of ratification, by silence, by acquiescence, and unreasonable lapse of time. That the executor paid to Mrs. Rathbone, the plaintiff, during her minority, a part of the proceeds of the sale of the realty in question, and that she received the same, knowing them to be such, is supported by facts tending to prove the same. This testimony being given, it seems to be clear that it was a question for the jury to decide whether or not the plaintiff had equitably estopped herself in this cause, by the receipt of the proceeds of the sale either during infancy or majority, and whether or not after majority, by knowingly receiving and retaining the proceeds, she had ratified the sale of the executor, and this raises at once the question as to whether in an action of ejectment, the defense of an equitable estoppel is sufficient. It seems that the Supreme Court of the United States has decided that it is. And beyond that, on a title by estoppel an action by ejectment itself may be maintained. *Stoddard*

v. *Chambers*, 2 How. 282; *Dickerson* v. *Colgrove*, 100 U. S. 579; *Kirk* v. *Hamilton*, 102 U. S. 68.

It being assumed, therefore, that equitable estoppel can be urged as a defense in ejectment, is the question of estoppel one of law for the court or of fact for the jury? We contend that the court erred when it considered it as solely a matter of law. Under the circumstances of the case below, and evidence adduced, it became the duty of the court to submit the question of estoppel to the jury. *Dowling* v. *Bank*, 145 U. S. 512.

The plaintiff is estopped by her failure to disaffirm the sale and her retention of the consideration for an unreasonable time after attaining her majority. *Craig* v. *Van Bebber*, 18 Am. St. 674; 10 Enc. of Law, 647, n. 1; Tyler on Infancy and Coverture, 100, 101. A minor who executes a deed of conveyance of real estate must disaffirm it within a reasonable time after he becomes of age or be barred of his right to do so. *Goodnow* v. *Lumber Co.*, 31 Minn. 468; *Ward* v. *Laverty*, 19 Neb. 429; *O'Brien* v. *Gaslin*, 20 Neb. 347. What is a reasonable time is a question for the jury. *Wiley* v. *Wilson*, 77 Ind. 596; *Stringer* v. *Ins. Co.*, 82 Ind. 100; *Scott* v. *Buchanan*, 11 Humph. 468; *Irvine* v. *Irvine*, 9 Wall. 617.

*Mr. G. E. Hamilton, Mr. M. J. Colbert* and *Mr. H. G. Milans* for the appellee:

1. If a person absents himself from his residence for seven years without having been heard from by those who would naturally have heard from him he will be presumed to be dead. Lawson on Presumptive Evidence, 200. The Supreme Court of the United States lays down the same rule. *Davie* v. *Briggs*, 97 U. S. 628. And indeed this is the rule laid down by all the courts and text writers. Taylor on Evidence, Sec. 157; Stephen on Evidence, Ch. 14, Art. 99; 1 Greenleaf on Evidence, Sec. 41; *Baden* v. *McKinney*, 18 D. C. 268; 1 Am. and Eng. Enc. of Law, 39, and cases there referred to.

This being the presumption what is its effect? It may be true that the presumption is only *prima facie*, but the presumption must prevail in the absence of any evidence to the contrary. 1 Greenleaf on Evidence, Sec. 33; *United States* v. *Wiggins*, 14 Pet. 347. Even aside from the question of his death, the proof shows such an abandonment by the life tenant of his estate as gives to the plaintiff a right of entry.

A tenancy by the curtesy may be ended by the tenant's repudiating the reversioner's title and setting up one in himself, whereupon his holding became adverse, the tenancy destroyed, giving the heir the right of entry and to gain possession by action of ejectment. *Walden* v. *Bodley*, 14 Pet. 156; *Zeller* v. *Eckhardt*, 4 How. 289. In this case the life tenant has not set up an adverse claim, but he has suffered the defendant to do so by failing to hold and maintain his possession, and he is always responsible for any wrong that endangers the inheritance. 4 Kent, 77; *Moore* v. *Elsworth*, 3 Conn. 483; *Sackett* v. *Sackett*, 8 Pick. 309; *White* v. *Wagner*, 4 H. & J. 373. The life tenant has ended his estate by deserting the property, which is equivalent to a surrender *in pais*. *Moore* v. *Allen*, 3 Conn. 483; *McKenney* v. *Reeder*, 7 Watts, 123.

2. With respect to the alleged equitable estoppel relied on by the defendant, the inquiry here is, did the plaintiff, after her majority, with full knowledge of all the facts and of her rights thereunder, knowingly elect to take the proceeds of the sale instead of the land itself and thereby estop herself from maintaining this suit? Upon this inquiry the burden is upon the defendant to show that the plaintiff ratified this unlawful sale after attaining her majority by electing to take from Calvert the proceeds of the sale in his hands, and the answer to such a contention is that there is no such proof in the record. *Railroad Co.* v. *Forsythe*, 159 U. S. 62.

In the first place, there is a total failure of any proof of ratification, and in the second place, this case does not come within any of the principles of equitable estoppel. The correct rule is laid down in *Hoffman* v. *Coal Co.*, 16 Md. 508; *Reynolds* v. *Insurance Co.*, 34 Md. 289; *Tucker* v. *Moreland*, 10 Pet. 76. The defense of an estoppel *in pais* must fail for the further reason that there is no evidence that the defendant either requested, permitted, authorized, or knew of Calvert's application of any part of the $1,500 purchase money to or for the benefit of the four children of Lucy V. Elkin, or that Calvert had any authority either as executor or guardian to apply the proceeds of the sale to their support, nor does the record show what part of this supposed expenditure went to the benefit of this plaintiff, so that these transactions between the plaintiff and her uncle cannot be invoked to affect the rights of the parties to this action.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This case has been in this court on a former appeal, and the decision then made is reported in 4 App. D. C. 475. The facts of the case are there set out, and it is only necessary to refer to them here so far as it may be required to an understanding of the questions presented on this appeal.

At the conclusion of the trial below, and upon the whole evidence produced, the court, at the request of the plaintiff, instructed the jury that the verdict should be for the plaintiff, and such verdict was accordingly rendered and the defendant excepted, and has prosecuted this appeal.

In respect to the instruction given, there are three errors assigned. 1st. That the court should have left the question to the jury to determine, whether the conveyance of the land from Elkins, the husband, to Calvert, and by the latter to Mrs. Elkins, the wife, under whom the plaintiff claims, was founded upon a valuable consideration, and therefore invested the wife with a statutory separate estate, with

power to will the same.    2d. That there was error in hold-
ing that there was no matter of fact for the consideration of
the jury upon the question of the life or death of Abram
Elkins, the tenant by the curtesy; and, 3d. That there was
error in holding by the court that there was not sufficient
evidence to support an estoppel as against the plaintiff's
right to recover, upon the ground of the alleged receipt of
some portion of the proceeds of the sale of the land in con-
troversy by the plaintiff, and her failure to disaffirm the sale
made by the executor under the power in her mother's will,
within a reasonable time after attaining the age of majority.

1. With respect to the first of these questions, but little
need be said.    It has already been held by this court, on the
former appeal, that the conveyance of the land to the wife
by the husband, through a third party as a mere inter-
mediary, was a gift or conveyance from the husband to the
wife, within the meaning of the statute; and there is nothing
shown in the present record to change in any manner the
former declared effect of the conveyance.    It is not pretended
that there was any consideration passed from Calvert to
Elkins, or from Mrs. Elkins to Calvert, for the conveyances.
The facts of the transaction are stated by Calvert, a party to
the deeds, and who was called and examined as a witness in
the case by the defendant.    The small amounts of money
referred to in the evidence, that were received by Elkins, the
husband, from his wife, were given him to aid in paying for
the building of the small house that was erected on the land.

2. The question whether Elkins, the tenant by the curtesy,
was dead or alive, at the time of the bringing of the present
action of ejectment, in the absence of any direct or positive
evidence of the fact, the one way or the other, is determined
by the presumption raised by law.    The principle uniformly
maintained is, that where a party has been absent seven years
without having been heard of, the presumption is that he is
then dead, though there is no presumption as to the time
when he died.    *Davie* v. *Briggs*, 97 U. S. 628.    The principle,

with its limitations and qualifications, is found clearly stated
in the works of both Greenleaf and Taylor on Evidence.    In
the first of these works, that of Greenleaf, Sec. 41, the prin-
ciple is stated to be, that "where the issue is upon the *life* or
*death* of a person once shown to have been living, the burden
of proof lies upon the party who asserts the death.    But after
the lapse of *seven years*, without intelligence concerning the
person, the presumption of life ceases, and the burden of proof
is devolved on the other party.    This period was inserted,
upon great deliberation, in the statute of bigamy, and the
statute concerning leases for lives, and has since been adopted,
from analogy, in other cases."    The principle is stated in
substantially the same terms in 1 Taylor on Evidence, Sec.
200 (8th Edition), and also in Stephen on Evidence, Ch. 14,
Art. 99.    The evidence shows, as well that produced on the
part of the defendants, as that produced on the part of the
plaintiff, and about which there is no dispute, that soon after
the death of his wife, in 1876, Abram Elkins, the surviving
husband, left his domicile in this District and went to parts
unknown to his children, or to their relations in whose care
they were left; and he left them in a state of utter destitu-
tion and dependence.    The proof shows that repeated in-
quiries have been made to ascertain his whereabouts, or
whether he was dead or alive, and that no tidings of him
could be or has been obtained.    To the time of bringing the
action, his absence had continued for about fifteen years, and
to the present time, for a period of about twenty years; and
no person here appears to know whether he be dead or alive.
Both duty to and the natural affections of a parent for his
helpless children, certainly constituted the strongest possible
incentive to his return, or at least to some correspondence
with his children, or with those having the care of them.
But no certain or reliable intelligence whatever has been
received of him.    In view of these facts, it is but a charitable
construction of them, as well as an established legal pre-
sumption arising thereon, that the party was dead after the

lapse of seven years from the time of his leaving this District; and the court below was quite right in acting upon that presumption.    Upon the facts in evidence, the burden was cast upon the defendant of producing evidence to rebut the presumption of death; but no such evidence was offered.

3. Then, with respect to the third question, that of an estoppel, the evidence furnishes no foundation for its support.

The evidence shows, and about which there is no dispute, that the plaintiff was born in March, 1864, and was one of four children left by her mother, who died in 1876.    The property in controversy was sold to the defendant by the executor of Mrs. Elkins for $1,500, and at that time the plaintiff was about fifteen years of age.    Of the proceeds of sale of the property some portion was applied by the executor to the support and maintenance of the plaintiff before she arrived to the age of majority.    It was attempted to be shown that the plaintiff had been furnished by Calvert, the executor, with a pair of shoes after she arrived at age; but whether she was of age at the time is left in great doubt and uncertainty.    Calvert himself, a witness produced on the part of the defendant, says: "I do not know that I ever gave the plaintiff any money after she became of age.    I think I have bought things for her after she became of age. She became of age in 1881.    She said she was of age and she had a right to have these things, or something of that kind.    I do not know what it was I gave her; I cannot state what I gave her after she became of age."    The witness states that the plaintiff became of age in 1881, but if he intended to say that she attained the age of twenty-one years in 1881, he must have been mistaken, as the other witnesses, including the plaintiff herself, who testified as to the age of the plaintiff, say that her mother and father were married in 1863, and, that she was born in 1864, and, consequently, she did not attain the age of twenty-one years until 1885.    She says that the last article furnished her by

Calvert, the executor, was a pair of shoes, but she cannot be positive whether she was then of the age of twenty-one years or not. The suit was brought in June, 1891, the plaintiff then being about twenty-seven years of age.

It is a settled principle that estoppels *in pais* are not applicable to infants, and even a fraudulent representation as to capacity, made by an infant, will not be taken as an equivalent for actual capacity. *Sims* v. *Everhardt*, 102 U. S. 300. And where a deed in relation to real estate is made by an infant, the preponderance of authority would appear to hold, that mere silence or inactivity, after becoming of age, continued for a period less than that prescribed by the statute of limitations, unless accompanied by affirmative acts, manifesting an intention to assent to the deed, will not bar the infant's right to avoid the deed. *Sims* v. *Everhardt, supra*. But in this case the question is, not whether there has been an affirmance or disaffirmance of a *voidable* deed or conveyance of an infant, after such infant had attained full age, but whether there has been such an adoption or ratification by equitable construction of an entirely *void sale and conveyance* of an infant's estate, made by a third party, as executor or trustee, as will operate by way of an estoppel as against the owner—an infant at the time of the sale and conveyance made—by reason of the fact that such infant owner has received from the executor or trustee some portion of the proceeds of sale? The equitable estoppel set up, to be effective as a bar to the right of recovery in an action of ejectment, must be co-extensive with the original interest and title of the plaintiff. In other words, the ground of estoppel must apply to and constitute a full and complete answer to the plaintiff's right to recover the possession of the entire interest in the land sued for. How a court of equity might consider and deal with the facts of the case, is a question that we are not called upon to determine in this action. The attempt here is, to set up and make available, as a defense to an action of ejectment, what is supposed to

be an equitable estoppel, founded solely upon the fact that the plaintiff, while an infant, had applied for her support and maintenance some portion of the purchase money received for the property sold by the executor. It is not pretended that the plaintiff, by any act, conduct or admission of hers, caused or induced any change in the position of the defendant, to her prejudice. At the time of the sale to and the payment of the purchase money by the defendant, the plaintiff was only about fifteen years of age, and had no participation whatever in the making of the sale. That was a transaction between Calvert, acting under a supposed power which proved to be utterly void, and the defendant, the purchaser of the property under such power.

There are many cases found in the books where attempts have been made to preclude parties from asserting their rights to property, which had been illegally disposed of while they were under age or other disability, by force of what is denominated an equitable estoppel. But it is only in very peculiar cases and under very strong circumstances, and where the proof is clear and unmistakable, that such defenses can be maintained, and especially as a defense to an action at law to enforce a clear legal right. Otherwise, the infancy or other disability of the party whose property has been illegally disposed of, would afford him no such adequate protection as is contemplated by the law.

It has, however, been laid down in many cases, as being within the principle of equitable estoppel, that where a party, after he attains full age, and is under no disability, and acts with full knowledge of all the facts, accepts the proceeds of an unauthorized sale of his property made while he was a minor, he is estopped to dispute the validity of the sale. *Goodman* v. *Winter,* 64 Ala. 410 ; *France* v. *Haynes,* 67 Iowa, 139 ; *Schenck* v. *Sautter,* 73 Mo. 46 ; *Moore* v. *Hill,* 85 N. C. 218. And so it has been held, that the reception and substantial enjoyment of the benefits of the transaction, *after*

*reaching majority,* such as collecting the dividends or inter-
est, or receiving the principal, or other act totally inconsist-
ent with an honest intention to disaffirm or reject the con-
tract, will operate as an estoppel.   Schouler, Dom. Rel., Sec.
435, page 657.   But a party who receives money while un-
der age, from the sale of lands, is not estopped to claim the
land on attaining his majority.   *Gillespie* v. *Nabors,* 59 Ala.
441.   And where land was sold for the purpose of raising
funds to educate an infant, with the consent of the infant
and her mother, and the money was used for such purpose,
it was held, that the infant, after coming of age, was not es-
topped to claim the land.   *Schnell* v. *Chicago,* 38 Ill. 383.
And it has been repeatedly held, that infants whose prop-
erty has been sold without legal authority by parents, guar-
dians, or anyone else, can recover the property and thus
avoid an illegal sale of land, without first tendering the
price to the purchaser, leaving him, however, to recover
back such consideration as may remain within his reach.
Schouler, Dom. Rel., Secs. 444, 446 ; *Pitcher* v. *Laycock,* 7
Ind. 398 ; *Cresinger* v. *Welch,* 15 Ohio, 156 ; *Green* v. *Green,*
69 N. Y. 553 ; *Bedinger* v. *Wharton,* 27 Gratt. 857.

In the case of *Russ* v. *Alpaugh,* 118 Mass. 369, a tenant by
the curtesy, being in possession of the premises, executed a
mortgage, with full covenants of warranty, which was duly
acknowledged and recorded, and which was foreclosed, and
under which the defendant claimed title ; and the tenant
by the curtesy having died, leaving assets of equal value at
the time with the demanded premises, and which assets de-
scended or were distributed to the heirs claiming title under
the mother, it was held (Mr. Ch. J. Gray delivering the
opinion of the court), that the children were not estopped
by the deed or mortgage of the father, and the receipt of
the assets of his estate, to assert their title to the land by in-
heritance from the mother.

The portion of the proceeds of the sale of the property

that was expended for the board and clothing of the plaintiff by her uncle, the executor, was expended during her minority, and the proof does not show, with any degree of certainty, what portion of the proceeds of sale was thus expended. The only article about which there could be any doubt as to the time when it was supplied, is a pair of shoes, and in regard to that the proof wholly fails to fix the time with any certainty. That article, however, even supposing it to have been supplied by the uncle after the plaintiff arrived at age, was too insignificant to be made the foundation of an equitable estoppel to preclude the plaintiff the right to recover her interest in the land sued for. There is no sufficient basis shown for the application of the principle of equitable estoppel.

The cases relied on by the defendant, of *Dickerson* v. *Colgrove*, 100 U. S. 578, and *Kirk* v. *Hamilton*, 102 U. S. 68, do not apply to this case. They were cases of the application of the doctrine of equitable estoppel, it is true, but those cases did not relate to the property of infants, nor did they involve in any manner the consideration of the doctrine of adoption or ratification of illegal sales of infants' real estate, after the infant owner had attained full age.

This is doubtless a hard case upon the defendant. But the deeds and will relating to the title were all matters of public record, and it was incumbent upon the defendant, as it is upon all other purchasers, to make due inquiry as to the title of the property purchased, before parting with the purchase money. *Kirby* v. *Tallmadge*, 160 U. S. 379.

We find no error in the instruction given by the court below, and the judgment must, therefore, be affirmed.

*Judgment affirmed.*