# Marx *et al. v.* Clisby *et al.*

### Bill in Equity to enforce Trust in Land.

1. *Power of executor and trustee under will; right of beneficiary to enforce trust.*—Where an executor named in a will is, in the same instrument, made the trustee for the children of the testatrix, and subsequently, in·breach of his trust, he

[Marx *et al.* v. Clisby *et al.*]

executes a mortgage upon the trust estate in order to ob-
tain money to pay the debts of the testatrix, and the money
is so applied, after the foreclosure of such mortgage the
beneficiaries under the trust can not maintain a bill against
the purchaser at the foreclosure sale, or those claiming under
him, for the purpose of enforcing the trust in their favor in
the property so purchased and have the title divested out of
the purchaser and invested in them, without accounting to
the purchaser for the proceeds of the purchase money paid
for said property, which enured to their benefit.—(*Marx v.
Clisby*, 126 Ala. 127, modified.)

2. *Same; same; same.*—It is no objection to the application of the
doctrine that a beneficiary under a trust is estopped to deny
the validity of an unauthorized sale of the trust property,
so long as he retains and enjoys the benefits derived from
the appropriation of the money received from such sale,
that there was included in the conveyance of the trust prop-
erty other lands which the trustee had a right to convey; it
appearing that the trust property included in the convey-
ance increased the amount of the consideration received by
the trustee and it being easily ascertained to what extent
this consideration was increased.

3. *Election by or for infant; equitable estoppel.*—An infant can
not make an election and can not create an estoppel against
himself; but a court of equity has power and authority to
elect for him, and will not allow him to receive and hold
the proceeds of an unauthorized sale of his property and at
the same time repudiate such sale. Equitable estoppels of
this character apply to infants as well as to adults.

4. *Bill to enforce trust in land; election by court for infant; when
bill dismissed without prejudice.*—Where several beneficiar-
ies under a trust, only one of whom is an adult, files a bill
to enforce the trust in the trust property in the hands of a
purchaser under an unauthorized sale by the trustee, but
they did not offer to account for the benefits received by
them from such invalid sale, and there is no sufficient proof
introduced to authorize the court to make an election for
the infant complainants, the bill will be dismissed without
prejudice to the rights of all the complainants, including the
adult beneficiary.

APPEAL from City Court of Birmingham, in Equity.
Heard before the Hon. W. W. WILKERSON.

The bill in this case was filed by the appellees, as the
only children and heirs at law of Fannie T. Clisby, de-
ceased, against the appellants. All the complainants

except Warner C. Clisby are under the age of 21 years, and sue by their next friend. This is the second appeal in this case. On the former appeal the decree of the chancellor overruling the demurrers to the bill as originally filed was affirmed. After the affirmance of this decree the bill was amended by striking out the portion thereof which averred that the mortgage by A. A. Clisby was given by him individually, or to secure individual debts. The bill as amended averred that Fanny T. Clisby died testate in January, 1889, leaving her husband, A. A. Clisby, and the complainants surviving her; that at the time of her death she was possessed of a large estate of real and personal property; that her will was duly probated in March, 1889, and by said will, after providing for several legacies of personal property, she devised all the remainder of her estate both real and personal to her husband, Alfred A. Clisby, upon certain trusts, for the benefit of her children; that said A. A. Clisby was nominated as executor of the will of Fannie T. Clisby, and after the probate thereof he entered upon the discharge of his duties as executor of said will and as trustee under it; that out of the rents and profits received from said estate, A. A. Clisby, as trustee under said will, purchased a lot in the city of Birmingham, which is the subject matter of the present suit, from D. R. Maddox; that the deed from Maddox was executed on May 12, 1891, and conveyed said lot to "A. A. Clisby, as trustee for Warner Clisby, Louise Clisby, Angus Clisby, Kathleen Clisby and John H. Clisby, under and by the will of Fannie T. Clisby, deceased, *  *  *  to have and to hold to the said A. A. Clisby, as trustee as aforesaid, his heirs and assigns forever;" that prior to the purchase of said lot from Maddox, to-wit, on May 4, 1889, A. A. Clisby being indebted as executor of the will of Fannie T. Clisby to one Samuel Hirsh in the sum of $12,500, to secure said indebtedness executed to said Hirsh upon certain property which belonged to Fannie T. Clisby at the time of her death, and which adjoined the lot purchased from Maddox; that at the maturity of this mortgage debt, on May 4, 1892, said Hirsh agreed to an extension of such mortgage indebtedness for two years, on condition that A. A. Clisby would execute a mortgage

to him on the lands which had been conveyed to A. A. Clisby, as trustee, by Maddox in addition to the lands included in the mortgage from Clisby to Hirsh executed in 1899, and that in order to secure the extension from Hirsh, A. A. Clisby executed such mortgage; that the extension in the time of payment of the indebtedness was the only consideration for including in the mortgage the lot conveyed to Clisby, as trustee, from Maddox; that this mortgage, as well as the first was duly recorded in the office of the judge of probate. It was then averred in the bill that default being made in the payment of the mortgage debt, the said last mortgage to Hirsh was foreclosed under the power of sale contained therein on September 22, 1894, and said Hirsh became the purchaser at said sale; that on April 21, 1896, said Samuel Hirsh sold out and conveyed said lands to Steiner Bros., and from Steiner Bros. the lot involved in this controversy passed by mesne conveyances to the defendant. It was then averred that the said A. A. Clisby had no power as trustee, as executor or otherwise, to include the lot in controversy in the mortgage given by him to Samuel Hirsh; that said lot was conveyed by Maddox to A. A. Clisby, as trustee, and purchased with the rents and incomes arising from the property owned by Fannie T. Clisby at the time of her death, and that, therefore, those claiming said lot under A. A. Clisby took the legal title to said lands with notice that said title was burdened with a trust for the benefit of complainants set out in the will of Fannie T. Clisby, deceased.

Otto Marx, Cornelia A. Sellew, through whom said Marx immediately claimed, and A. A. Clisby, as executor of and trustee under the will of Fannie T. Clisby, were made parties defendant to the bill.

The prayer of the bill was that the several conveyances of the lot in controversy "be held and decreed to have been subject to the equitable rights of complainants as beneficiaries under said deed executed by said Maddox and under said will; that said Cornelia A. Sellew and said Otto Marx be required to account to complainants for the rents of said land received by each of them respectively; and that all title in said lands be divested out of said Cornelia A. Sellew and said Otto Marx and be

vested in said Alfred A. Clisby, to be by him held for the use and benefit of complainants on the trusts set out in said will; and for such other, further and general relief as complainants may be entitled to."

The will of Fannie T. Clisby and the several conveyances referred to were made exhibits to the bill. The first provision of the will as to the trust under which A. A. Clisby was to hold the property, real and personal, conveyed to him for the benefit of the complainant, was in the following language: "To keep the same together for and during his natural life, and during that time to manage, control and use the same for the benefit of my children, Warner Clisby, Louise Clisby, Angus Clisby, Kathleen Clisby, Leonard Clisby and all other children that may hereafter be born unto me, and that it is my further will and desire that in the managing and control of said property and the expenditures of the rents and profits thereof for the purposes aforesaid my said husband and trustee shall use his own discretion and exercise his own judgment, and that he shall not be held to account by my said children for his actings and doings or for the manner of expending and using the rents and profits aforesaid, during his said life, but that he shall be free from liability to so account during his said life."

The will also contains the following provision in reference to the powers of A. A. Clisby, as trustee: "My said husband and trustee shall also have the power, and he is hereby authorized to mortgage any or all of the real estate that I may die owning (legally or equitably) in the State of Alabama, for the purpose of raising such amount or amounts of money as he may find necessary to pay my debts, including the indebtedness of others assumed by me, as part of the considertaion of sales of real estate made by me, and shall apply the proceeds arising from the mortgage or mortgages as aforesaid to the payment of said indebtedness by me, and if he can not raise sufficient money for said purpose by mortgaging said property in whole or in part, then he is hereby authorized and empowered to sell at public or private sale such portions of my said estate as is absolutely necessary for that purpose and thus paying said

[Marx *et al.* v. Clisby *et al.*]

indebtedness; said sale to be at such price and on such terms as my said trustee shall think for the best interest of my estate."

There was a decree *pro confesso* against A. A. Clisby. The defendants Otto Marx and Cornelia A. Sellew filed a joint and separate answer to the bill, in which they set up that the money borrowed by A. A. Clisby from Samuel Hirsh was borrowed and solely used for the purpose of paying off the debts which were owing by said Fannie T. Clisby at the time of her death; that in borrowing and using said money, A. A. Clisby did not act for his own benefit, but for the exclusive use and benefit of the estate of Fannie T. Clisby; that the second mortgage to Hirsh executed on May 4, 1892, to secure the extension of the indebtedness and in which the lot in controversy was included, was executed to avoid a sale and sacrifice of the mortgage first given and to give the complainants the benefit of retaining the possession of said property, and that by reason of such extension A. A. Clisby, as executor and trustee under the will, remained in possession of the lot first conveyed in the mortgage to Hirsh for more than two years, during which time he received of the rents and profits of said lot for the benefit of complainants a much larger sum of money amounting to abount $5,000, and that by reason of the execution of each of said mortgages the debts of the estate of Fannie T. Clisby were paid, which resulted in benefits to the complainants, inasmuch as their interest in the estate was bound for the payment of such indebtedness; and that, therefore, it would be against conscience and equitable for the complainants to repudiate the authority of Clisby, as trustee and executor, to execute said mortgage and at the same time retain the benefit which they derived by reason of the same.

There was an agreed statement of facts in the case, the substance of which is sufficiently set forth in the opinion.

On the final submission of the cause upon the pleadings and proof the chancellor rendered a decree granting the complainants the relief prayed for and ordering that all the title in and to the lot in controversy be di-

vested out of Cornelia A. Sellew and Otto Marx and invested in A. A. Clisby, to be used by him for the use and benefit of complainants on the trust set out in the will of Fannie T. Clisby, deceased. From this decree the respondents appeal, and assign the rendition thereof as error.

WHITE & HOWZE, for appellants.—This bill is filed to recover the land itself without the recognition of any liability on the part of the complainants for the benefits which they have received from the application of the proceeds of said sale. This is inequitable and unjust, and will not be allowed in a court of conscience.—*Woodstock v. Fullenwider*, 87 Ala. 584; *Goodwin v. Winter*, 64 Ala. 410; *Bell v. Craig*, 52 Ala. 215; *Robertson v. Bradford*, 73 Ala. 116; *Oden v. Dupuy*, 99 Ala. 44.

BENNERS & BENNERS and BANKS & SELHEIMER, *contra*, cited *Marx v. Clisby*, 126 Ala. 109; *Hobbs v. Railroad Co.*, 122 Ala. 602; *Gillespie v. Nabors*, 59 Ala. 441.

TYSON, J.—The bill in this cause contains no offer to do equity, and on former appeal, this court held, that it was not subject to demurrer on that account, saying: "The fifth and sixth grounds [of demurrer] are without merit. They question the equity of the bill, for that complainants have not offered to return or account for the proceeds of the purchase money for said lots, which inured to their benefit, and have not offered to account for the benefits received by them. How could they be required to make such an offer? It was their money that paid for property, not liable under the will to be mortgaged; and as for that part of the other property covered by said mortgage, which might have been properly mortgaged to secure a debt of the testatrix, the only benefit complainants could have derived as to it, under said mortgage, was its extension for two years, and even that extension of the mortgage might have been a disadvantage to them. We fail to see how the bill is liable to any of the objections interposed by demurrer. The complainants were not estopped by any

unauthorized act of the trustee in mortgaging this trust land, nor have they received anything they are required to return, as a condition to the maintenance of their bill.—*Gillespie v. Nabors,* 59 Ala. 441; *Randolph v. Land Co.,* 104 Ala. 355."—*Marx v. Clisby,* 126 Ala. 109.

The averments of the bill that the debt secured by the mortgage was the debt of the trustee, and, therefore, under the provisions of the will, was a charge upon the lot in controversy, as well as upon the entire trust estate, and that it was discharged and extinguished by the foreclosure sale under the mortgage, seems to have escaped the court, and the opinion, if allowed to control the case as now presented, would lead to the result of giving the complainants an unconscionable advantage. We, therefore, must decline to allow it to control us on this appeal in so far as the point involving the question of benefit to complainants is concerned.

The question of benefit to complainants by the extinguishment of the mortgage debt, leaving out of view the demurrer, is squarely presented on the facts, and the estoppel set up against complainants on that account as a defense in the answer. The defense of estoppel being invoked, if it appears from the facts, that complainants are not entitled to the relief sought without being required to do equity, the court should have declined a further exercise of its jurisdiction in aid of their cause, unless they amended their bill by submitting themselves to its jurisdiction by proper averments and offer. Without such an offer in the bill, the court was without power or jurisdiction to render a decree against them requiring them to do equity. *Rogers v. Torbut,* 58 Ala. 525, 526; *Eslava v. Elmore,* 50 Ala. 578; *Smith v. Comer,* 65 Ala. 376; *Garland v. Watson,* 74 Ala. 323, 326; *Am. F. L. M. Co. v. Sewell,* 92 Ala. 169, 170; *Br. Bank v. Strother,* 15 Ala. 51, 60.

Complainants' testatrix, at the time of her death, was largely indebted, and the trustee, under the authority conferred upon him by the will, in 1889 borrowed from one Hirsh $12,500 which he secured by a mortgage, on a lot which was owned by the testatrix at the date of her death. This money was used exclusively by the trustee in paying debts of the testatrix. The law day

of the mortgage arrived in 1892, and the trustee being unable to pay it, the mortgagee agreed to extend the debt until 1894, upon consideration that the trustee execute to him a new mortgage conveying the property conveyed by the first and the lot involved in this suit. This was done. The debt not being paid upon the maturity of the new mortgage, it was foreclosed and the mortgagee became the purchaser of both lots, including the one involved in this suit, bidding the amount of his debt. The sale appears to have been regular—the auctioneer, in pursuance to the terms of the mortgage, executed a deed to the purchaser. Hirsh, the purchaser, conveyed the lot in controversy to Steiner Brothers, and it passed from them, through mense conveyances, to these appellants. Each of the grantees in the several conveyances paid a valuable consideration, and there is no evidence of any notice of the complainants' equity other than the constructive notice which arises from the probate of the will and the registration of the deed from Maddox to the trustee. The lot here involved, was not owned by the testatrix, but was purchased by the trustee with the rents and profits of lands devised to him and was conveyed to him by Maddox to be held for the benefit of the complainants in trust under the provisions of the will. The lot in controversy belongs in equity to the complainants, and not having belonged to the testatrix, the trustee under the will was without authority to mortgage it. *Marx v. Clisby, supra.* Being without this authority, his act in so doing was voidable at the election of the complainants. And, of necessity, their avoidance of the mortgage operates to destroy the conveyances to the several grantees claiming title under it, who, having constructive notice of complainants' right in this respect, are not *bona fide* purchasers. It is true, only one of the complainants, when the present bill was filed, was capable of making the election of repudiating the unauthorized act of the trustee, the others being infants, but notwithstanding their disability, and the undoubted power of the court to elect for them, they can no more be permitted to receive the benefits of the sale and at the same time repudiate it, than will the adult complainant be allowed to do so. As said in *Goodman v. Winter*, 64 Ala. 437, "While an infant cannot make an

election, a court of equity has undoubted jurisdiction to elect for him. It is also true, that an infant may not create an estoppel; yet, under circumstances, the benefits of a particular transaction may have been so appropriated for his advantage, that he will not be heard to gainsay it." It is without dispute that the money borrowed and comprising the mortgage debt, was applied exclusively to the payment of debts of the testatrix, which, of course, were a charge upon this lot as well as upon the entire property of the trust estate belonging to these complainants. When the mortgagee purchased this lot and the other lot at the mortgage sale, bidding the amount due on his mortgage, this operated as an extinguishment of his debt and, of necessity, resulted in relieving the complainants' estate to the extent of the debts against it paid out of the $12,500. And it cannot be doubted, assuming an absolute want of authority in the trustee to borrow the $12,500, that having borrowed it and appropriated it to relieving the estate of debts for which it was liable, that Hirsh would be subrogated to the rights of those creditors whose debts were paid out of the money loaned by him.—*Faulk v. Calloway*, 123 Ala. 325. So then it may be unqualifiedly said that as a result of the transaction with Hirsh, whether made with or without authority, the trustee relieved the estate of a charge or charges to the extent of the amount of the loan to him, which Hirsh had the right to have repaid to him out of the estate. This being true the complainants must be held to have received the benefit of the transaction. Having received it, they are estopped to deny the validity of the sale and at the same time enjoy the benefits derived from the appropriation of the money borrowed from Hirsh, whose right to collect it was destroyed by his purchase at the foreclosure. Hirsh's position as purchaser at that sale cannot be different, in so far as the question here involved is concerned, than would be that of a stranger who had purchased and paid the purchase price to him. The case, then, is clearly governed by the principles announced in *Woodstock Iron Co. v. Fullenwider*, 87 Ala. 586: "It is deemed unconscionable that the heirs or devisees shall reap the fruits of the purchaser's payment of money, appropriated to the discharge of debts, which were a charge on the lands and at the same time

recover the lands. They are estopped to deny the validity of the sale and at the same time enjoy the benefits derived from the appropriation of the purchase money. And this principle applies to minors, as well as adults." This doctrine has often been declared and enforced in this court alike as to adults and infants. *Goodman v. Winter, supra; Bell v. Craig,* 52 Ala. 215; *Robertson v. Bradford,* 73 Ala. 116; *Bland v. Bowie,* 53 Ala. 152; *Hobbs v. Nashville, Chattanooga & St. Louis R'y.,* 122 Ala. 602.

While it is doubtless true, in the absence of proof that the sale of the lot under the mortgage was to the interest of the estate of the infant complainants, the court is not in a position to elect for them, still if the proof had been made that an avoidance would be to their advantage, the court must refuse to avoid the transaction, without the power to mold its decree so as not to allow them the unfair advantage of avoiding it while retaining its fruits.—*Goodman v. Winter, supra;* *Hobbs v. N. C. & St. L. R'y, supra.*

But it is urged that as the sale under the mortgage was valid as to one lot and voidable as to the one here involved, that the doctrine of the cases cited above has no application. This contention is based upon the proposition that there is no evidence that the bid of the purchaser at the foreclosure sale was increased by reason of the lot here involved being included in the purchase. It would be strange, indeed, that Hirsh, the mortgagee, consented to an extension of his debt upon condition that this lot be put in the mortgage if he regarded it as valueless, and that he would, after purchasing it, sell it, executing a warranty title to it. It is further urged in support of the contention, even if there was such evidence, there would be no means by which it could be ascertained to what extent the bid was so increased. One of the principles underlying the doctrine in the cases cited is, that the purchaser, notwithstanding the sale is void or voidable, will be protected when he has in good faith acted upon the transaction as valid. It is of no consequence, that he could have known that he was not acquiring a title. For, in all of the cases cited, it was affirmed, that the purchaser acquired no title. This they were bound to have known, for the reason that the defect which rendered their conveyances in-

valid appeared of record, as here, in their chain of title. It cannot be affirmed, upon the facts that Hirsh did not honestly believe that he was acquiring a good title to both of the lots. "The good faith of the purchaser must be presumed until the contrary is shown."—*Davis v. Gaines*, 104 U. S. 386. Hirsh having purchased this lot in good faith, believing as he did that he was acquiring a perfect title to it, there is no difficulty in ascertaining the amount of benefit received by complainants out of the transaction. Ascertain the value on day of sale of the lot first mortgaged and deduct this sum from the amount due on that day on the mortgage, and the balance, if any, with interest from said date, would be the amount complainants should be required to pay, less the rental value, if any, of the Maddox lot. It seems to us this point was necessarily involved in *Oden v. Dupuy*, 99 Ala. 36, where the purchaser believed he was buying a tract of 240 acres of land, which was sold by an administrator under a decree of the probate court. He acquired an indefeasible title to 200 acres, but none to the 40 acres. The proceedings of the court as to the sale of the latter was absolutely void, and yet the court upon bill filed by the heirs to recover it, applied the principles we have here announced, and held them estopped from impeaching it.

As the infant complainants have no right of election, and as it must be exercised for them by the court, and since the court has not had an opportunity to do so, we will dismiss the bill, but it must be without prejudice to their rights to file another if they are so advised. However, as to the adult complainant, he having the right to elect for himself, within a reasonable time, to avoid the transaction and restitution not being proffered by him in the bill, it must be dismissed.—*Davis v. Gaines, supra.* A majority of the court, however, are of the opinion that the bill should be dismissed without prejudice as to all the complainants and it is so ordered.

Reversed and rendered.