## Kine v. Zuckerman.

*Children en ventre sa mere—Right to maintain action for personal injuries caused before birth.*

1. A child born with a deformity, as the loss of a hand, caused by the negligence of another while it was *en ventre sa mere*, can maintain an action by its next friend to recover damages for such injuries from the person who inflicted them.

2. The father of such child may also maintain an action in his own right for his personal damages caused by the child's deformity.

Statutory demurrer.  C. P. No. 2, Phila. Co., Dec. T., 1922, No. 1557.

*Oscar Rosenbaum,* for plaintiff; *L. M. Schoch,* for defendant.

GORDON, JR., J., Feb. 25, 1924.—This is an action of trespass for damages for personal injuries, and the case is before us on an affidavit of defence raising questions of law. (The plaintiffs are an infant, Florence Kine, suing by her father and next friend, Israel Kine, and the father suing in his own right.) The suit arises out of an automobile accident which occurred one month and eleven days before the infant plaintiff was born, and in which the mother and the unborn child suffered injuries which are alleged to have resulted in the birth of the infant with a serious physical deformity.  The question of law raised by the affidavit of defence is whether a child born with injuries caused by the negligence of another while it is *en ventre sa mere* can recover damages for such injuries from the person who inflicted them.  This question appears to be one without precedent in Pennsylvania.  A careful search of the authorities and the diligence of counsel have disclosed no case in this State in which the question has been raised and decided, though it has been before the courts of other jurisdictions, which are not in accord in the conclusions reached.  We are, therefore, free to decide the question upon general principles, untrammeled by controlling precedent.

It may be conceded that the weight of authority, from the standpoint of numbers, is against the existence of a right of action in such a case as this.  On the other hand, we have been impressed by the cogent arguments of those decisions which sustain the right of recovery, and are of opinion that this view is supported by the more potent reasoning.

There is no doubt that at early common law an injury to an unborn child was looked upon as an injury to the mother exclusively.  The child and the mother were one until delivery.  The former was considered as having no existence independent of the parent.  It was not yet a human being; murder could not be committed by its destruction; it could assert no rights, and had none to protect.  It was not long, however, before the basic narrowness and inequity of this view was recognized, and we find the characteristic adaptability of our common law to changing circumstances and broadening knowledge gradually modifying this view by the extension of certain rights, principally of property and inheritance, to the unborn.  It has been held that for certain purposes, indeed for all beneficial purposes, a child *en ventre sa mere* is to be considered as born: 5 T. R., 49; 1 P. Wms., 332; Marsellis *v.* Thalhimer, 2 Paige (N. Y.), 35; Gillespie *v.* Nabors, 59 Ala. 441.  It has been held capable of taking under a will, by descent, or under a marriage settlement.  It may have a guardian appointed; may be appointed executor; and, through its guardian, may obtain an injunction to stay waste: Stedfast *v.* Nicoll, 3 Johns. Cas. (N. Y.) 18; Swift *v.* Duffield, 5 S. & R. 38; Harper *v.* Archer, 4 Smedes and M. (Miss.) 99.

Blackstone says in his Commentaries: "Life is the immediate gift of God, a right inherent by nature in every individual; and it begins in contemplation

of law as soon as an infant is able to stir in the mother's womb. . . . An infant *en ventre sa mere*, or in the mother's womb, is supposed in law to be born for many purposes. It is capable of having a legacy, or a surrender of a copyhold estate, made to it. It may have a guardian assigned to it; and it is enabled to have an estate limited to its use, and to take afterwards by such limitation as if it were then actually born. And in this point the civil law concurs with ours:" 1 Black Comm., 129. It has been said that "by a legal fiction or indulgence, a legal personality is imputed to an unborn child as a rule of property for all purposes beneficial to an infant after his birth:" George and Richard, L. R., 3 Ad. & Ecc. 466; Drobner v. Peters, 232 N. Y. 220; but not for purposes working to his detriment: Villar v. Gilbey (1907), A. C. 139, 145. The reason given for this so-called "legal fiction or indulgence," the conservation of the future property rights of .the child, would seem to us to apply with equal, if not greater, force to the securing of its personal welfare. The fundamental rights of personal security and the pursuit of happiness outweigh in importance the transient rights of property. Indeed, it is not necessary to characterize as a fiction the view that an infant is *in esse* when it becomes quick in the womb. Modern scientific research in the domain of embryology has demonstrated that the fœtus is an identity independent of the mother. It has its own independent blood circulation, and draws from its mother only the elements which nourish it and stimulate its growth. This in itself would require us to disregard the common law rule which merges the mother and child into one being during this period, and would justify us in advancing the time at which the child acquires all the rights of an individual, and thus make the law conform with the fact. Nevertheless, whether the assignment of a legal personality to the unborn child be based upon scientific truth or upon legal fiction, the reason for the adoption of this view is stronger when we are dealing with the health of the individual, and his ability after birth to seek his complete happiness and perform his full duty as a citizen and member of society, than when we are dealing merely with his property rights.

In Quinlen v. Welch, 69 Hun (N. Y.), 584, it was held that a child, born after its father's death, could maintain an action for the death of its father, who was killed through intoxication, the Civil Damage Act of New York having given a right of action to a child for the loss of means of support against one selling intoxicating liquor to its father, when the latter's death occurs by reason of consequent intoxication.

In Thellusson v. Woodford, 4 Vesey, Jr., 227, 323, Justice Buller said: "Why should not children *en ventre sa mere* be considered generally as in existence? They are entitled to all the privileges of other persons."

In the case of George and Richard, L. R., 3 Ad. & Ecc. 466, Sir Robert Filmore held that a child *en ventre sa mere* was a child within the meaning of 9 and 10 Vict., ch. 93, so as to be capable, when born, of maintaining an action for pecuniary loss suffered by the death of its father from the wrongful acts of others while it was in the womb.

Among the more recent cases may be cited Herndon v. St. Louis & S. F. R. Co., 128 Pac. Repr. 727, where "a child unborn at the time of his father's death, but later born alive, is to be considered under our laws as an existing person at the time of his father's death, and, therefore, a beneficiary and entitled to participate, under the statute, in any recovery of damages for the wrongful death of the father." See, also, Galveston, H. & S. A. R. Co. v. Contreras, 72 S. W. Repr. 1051; Cooper v. Heatherton, 65 App. Div. 561, quoting Kent, J., in Stedfast v. Nicoll, 3 Johns. Cas. (N. Y.) 18, who notes

4 D. & C.

Kine v. Zuckerman.

"a late case" where "the court goes so far as to say that it is now settled that an infant *en ventre sa mere* shall be considered, generally speaking, as born for all purposes for his own benefit:" Nugent *v.* Brooklyn Heights R. R. Co., 154 App. Div. 667; dissenting opinion, Boggs, Jr., in Allaire *v.* St. Luke's Hospital, 184 Ill. 359; Beven on Negligence (3rd ed.), 73, 76; and Drobner *v.* Peters, 194 App. Div. 696, to which we acknowledge indebtedness for material used in this opinion, though the case was subsequently overruled in the case of the same name in 232 N. Y. 220.

The reasons given in those decisions which deny the right of recovery in such a case as this are summarized by Pound, J., in Drobner *v.* Peters, 232 N. Y. 220; as, first, lack of authority; second, practical inconvenience and possible injustice; third, no separate entity apart from the mother, and, therefore, no duty of care; fourth, no person or human being *in esse* at the time of the accident.

The first of these reasons, the want of authority, is the weakest. The genius of the common law is its adaptability to new conditions, and the flexibility with which, under common law forms, it furnishes remedies for changing conditions. The maxim *ubi jus ibi remedium* is the touchstone of our legal progress, and has kept the spirit of the common law alive into a new civilization. In Broom's Legal Maxims, page 192, it is said: "The principle adopted by courts of law accordingly is that the novelty of the particular complaint alleged in an action on the case is no objection, provided that an injury cognizable by law be shown to have been inflicted on the plaintiff, in which case, although there be no precedent, the common law will judge according to the law of nature and the public good." Nearly all of the modern law of negligence is of recent origin. Rights of action have come into being by judicial decision, which at the common law were undreamed of, and our courts have not hesitated, in the adaptation of the law to modern conditions, to extend remedies for the redress of injuries for which no precedent exists. The absence of precedent might be invoked for a refusal to create a new right by judicial legislation, but it is no ground for refusing to grant a remedy for a wrongful injury to a right which is novel in instance, but not in principle.

The second reason for denying the right of recovery—the practical inconvenience and possible injustice—seems to us to be beside the point. Are we to deny a remedy for the invasion of a right merely because possible fraud or perjury might be committed in a particular case, and thus confess the inability of our judicial machinery to ascertain the truth in the trial of issues of fact? If the right exists, the rules of evidence are adequate to require satisfactory proof of responsibility, and the determination of the relation of cause and effect can be controlled by the court as readily at the trial as at this stage of the case. Indeed, in the present case, we have grave doubts of the ability of the plaintiff satisfactorily to connect the particular injury suffered with the negligence of the defendant, but we can conceive of many cases in which the causal relation could be indubitably established. Shall we close the door of justice in the face of a deserving litigant merely because of the fear that the undeserving might at times receive more than their due? We think not. The argument from inconvenience and possible injustice seems to us to point the way to allowing rather than to denying recovery, for to deny recovery *in limine* is more likely to result in "possible injustice" than to admit the right and to hold the party asserting it to an adequate proof of responsibility.

The third and fourth reasons advanced to defeat recovery have already been commented upon. In Walker *v.* Great Northern Ry. Co., 28 L. R. Ir. 69,

the right of recovery was denied upon the theory that the suit was based upon the contractual obligation to carry safely between the mother, who was a passenger on the defendant's railway at the time of the injury, and the company, a contractual relation to which the child was held not to be a party. The opinion clearly indicates, however, that, were it not for the fact that the action was based upon this contractual relation, a different result would have been reached.

The criminal law has always been solicitous to protect the rights of the unborn. While it is not murder to kill an unborn child, though it is quick in the womb, it was always considered to be a grave offence, and, in some instances, might amount to manslaughter: 1 Hale's Pleas of the Crown, 433; 1 Wood's Inst., 11; Rex *v.* Senior, 1 Moody Cr. C. 346; 1 Black. Comm., 130. In 1 P. Wms., 245, it is said: "And if a child be born alive and afterwards die in consequence of a potion or beating administered before birth, it is murder." See, also, notes 31 and 32 to Lewis's Edition of Blackstone's Commentaries, page 118. The taking of the life of an unborn child thus being considered as a wrong against society, we see no logical reason for denying the right of civil compensation to one injured by the commission of such a wrong, but being so fortunate as to survive, though carrying into life the burden and handicap of the injury.

Notwithstanding the numerous decisions in other jurisdictions to the contrary, we think the better reasoning rests with those decisions which uphold the right of recovery for such an injury, and we, therefore, conclude that an unborn child who receives injuries while quick in the womb, which are due to the negligence of another, can, if it survive, maintain an action for the damages which it suffers in life as a result of such negligence.

The right of recovery can also be supported upon another ground, which eliminates the necessity of considering the legal status of the unborn. Liability for personal injuries is dependent in the law of negligence upon the presence of two factors; namely, first, negligence on the part of the person setting a harmful force in motion, and, second, the resultant injury to an individual. The absence of either factor will defeat recovery. The time which elapses between the negligent act which puts harmful forces in motion and the receipt of the injury by the person injured is of no consequence, except as it may have an evidential value in a dispute as to cause and effect. If the causal relation be admitted, it is immaterial whether the intervening time be a moment or a year. It is sufficient if an examination of the circumstances discloses that the chain of events has proceeded to the natural and probable consequences of the negligent act, uninfluenced by the independent intervening acts of third persons. Ingenuity could suggest innumerable sets of circumstances in which the injury received might be delayed for long periods of time after the negligence was committed. Let us suppose that one negligently installs a dangerous and defective apparatus in a home before the birth of a child, and that shortly after birth the child is injured by it. Can there be any doubt of the child's right to damages, though it was not in existence at the time the negligence occurred? It is true that in the present case the child was born with the injury. But the injury which accompanied it into the world it suffers now, when it has become a being capable of receiving injury. The hand which it lacks, and which it is alleged it would have except for the negligent interference of the defendant with the processes of nature, has been snatched from it as effectually as if it had been cut off after birth. The negligence has progressively acted in natural results from cause

4 D. & C.

to effect, until it rests at last upon a human being. Clearly this is so. Conceding the non-existence of the child before birth, we are forced to the conclusion that the natural consequence of the defendant's alleged negligence was the deprivation to the existing child of its right hand, and the loss by it in life of the advantages of the possession of a fully equipped body. This is the injury which the infant plaintiff is now suffering, and for it the defendant is liable, if the latter's negligence be proved.

The affidavit of defence is adjudged insufficient, and leave is granted to the defendant to file an affidavit of defence to the merits within fifteen days.