HELEN RYAN AND EDWARD F. RYAN, HER HUSBAND; EDWARD RYAN, BY HIS NEXT FRIEND EDWARD F. RYAN, AND EDWARD F. RYAN, INDIVIDUALLY, PLAINTIFFS, v. PUBLIC SERVICE CO-ORDINATED TRANSPORT, MARTIN J. O'BRIEN, ELSO EMBROIDERY MANUFACTURING CO., A CORPORATION OF THE STATE OF NEW JERSEY, AND HARRY ELKIN, DEFENDANTS.

Decided July 1, 1940.

For the plaintiffs, *Joseph H. Gaudielle* (*James A. Major*, of counsel).

For the defendants Elso Embroidery Manufacturing Co. and Harry Elkin, *McDermott, Enright & Carpenter*.

BARBOUR, S. C. C.   This matter comes before the court on motion made by defendants Elso Embroidery Manufacturing Co. and Harry Elkin to strike the fifth and sixth counts of the complaint filed in the above entitled cause on the ground that each of said counts does not set forth a legal cause of action.

In the fifth count of the complaint Edward Ryan, an infant, by his next friend Edward F. Ryan, alleges a cause of action for personal injuries sustained by him while *en ventre sa mere,* and in the sixth count his father, Edward F. Ryan, seeks to recover for consequential damages.

The question is:   Can an infant, in the absence of statute, maintain an action for personal injuries sustained while *en ventre sa mere?*

There is no statute or judicial authority in the State of New Jersey granting or denying to an infant the right to maintain an action for personal injuries sustained while *en ventre sa mere,* and while there have been strong dissenting opinions in other states the courts of review of other states have consistently held that such an action could not be maintained.

Defendants state, "At the time of the accident the infant was part of the mother, and any injuries received by that part of the mother were injuries to the mother and not injuries to the child in the mother's womb since the latter had no existence separate and apart from its mother."

The Supreme Judicial Court of Massachusetts in *Dietrich* v. *Northampton* (1884), 138 *Mass.* 14, held: "that as an unborn child was a part of the mother at the time of the injury, any damage to it which was not too remote to be recovered for at all was recoverable by her * * *."

In *Allaire* v. *St. Luke's Hospital et al.* (1900), 56 *N. E.* 638, the Supreme Court of Illinois said:

"The action is not given by any statute, and, if maintainable, it must be so by the common law, and therefore the question is whether, at common law, the action can be maintained," and held that such action could not be maintained.

Mr. Justice Boggs in his dissenting opinion in that case gave the clearest argument in favor of the maintenance of such an action, saying:

"It may be conceded no case adjudicated at the common law can be found wherein a plaintiff was awarded damages for injuries inflicted upon his person while in the womb of his mother. But an adjudicated case is not indispensable to establish a right to recover under the rules of the common law. Lord Mansfield declared: 'The law of England would be an absurd science were it founded upon precedents only. Precedents,' he observed, 'were to illustrate principles, and to give them a fixed certainty.' 1 *Kent Comm.* 477."

He further said:

"The argument is that at the common law an unborn

child was but a part of the mother, and had no existence or being which could be the subject-matter of injury distinct from the mother, and that an injury to it was but an injury to the mother; that in such case there was but one person—one life—that of the mother. A fœtus in the womb of the mother may well be regarded as but a part of the bowels of the mother during a portion of the period of gestation; but if, while in the womb, it reaches that prenatal age of viability when the destruction of the life of the mother does not necessarily end its existence also, and when, if separated prematurely, and by artificial means from the mother, it would be so far a matured human being as that it would live and grow, mentally and physically, as other children generally, it is but to deny a palpable fact to argue there is but one life, and that the life of the mother. Medical science and skill and experience have demonstrated that at a period of gestation in advance of the period of parturition the fœtus is capable of independent and separate life, and that, though within the body of the mother, it is not merely a part of her body, for her body may die in all of its parts and the child remain alive, and capable of maintaining life, when separated from the dead body of the mother. If at that period a child so advanced is injured in its limbs or members, and is born into the living world suffering from the effects of the injury, is it not sacrificing truth to a mere theoretical abstraction to say the injury was not to the child, but wholly to the mother?

"A child *in ventre sa mere* was regarded at the common law as *in esse* from the time of conception for the purpose of taking any estate, whether by descent or devise, or under the statute of distribution, if the infant was born alive after such a period of fœtal existence that its continuance in life was or might be reasonably expected. 10 *Am. & Eng. Encycl. L.* 624; *Co. Litt.* 36. Blackstone, after declaring the right of personal security to be an absolute right, says: 'The right of personal security consists in a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health, and his reputation. Life is the immediate gift of God—a right inherent by nature in every individual; and

it begins, in contemplation of law, as soon as an infant is able to stir in the mother's womb. For, if a woman is quick with child, and by a potion or otherwise killeth it in her womb, or if any one beat her, whereby the child dieth in her body, and she is delivered of a dead child, this, though not murder, was, by the ancient law, homicide or manslaughter.' Though it was the rule of the common law if one should unlawfully beat a woman pregnant with child, and thereby cause the child to die in the body of the mother, the crime was not deemed to be murder, but the ancient crime of homicide or manslaughter, still the doctrine of the common law was, if the child should not die in the womb of the mother, but should be born alive, and should afterwards die in consequence of the assault while in the womb of the mother, the offense was deemed to be murder. 3 *Co. Inst.* 50; 1 *P. Wms.* 345. If, in the contemplation of the common law, life begins as soon as the infant is able to stir in the mother's womb, and that an injury inflicted upon an infant while in the womb of the mother shall be deemed murder if the infant survive the wound during prenatal life, but succumbs to it, and dies from it after being born, and if every legitimate infant *in ventre sa mere* is to be deemed as born for all purposes beneficial to the child, why should it be supposed the common law would have denied to an infant born alive the right to recover damages for the injury inflicted upon it while in the womb of the mother? Had such injury, though inflicted on the child while in the mother's womb, been sufficient to cause the death of the infant after it had been born alive, the common law would have regarded the injury as having been inflicted upon a human being, and punished the perpetrator accordingly; and, that being true, why should the infant which survives be denied the right to recover damages occasioned by the same injury? In the case at bar the infant, when the injury was inflicted, had, as the declaration alleged, reached that advanced stage of fœtal life which would have, according to the experience of mankind, and according to the medical learning of the age, endowed it with such vitality and vigor, and with members and faculties so far complete

and mature, that it could have maintained independent life, and the death of the mother would not have deprived it of life. It is but natural justice that such an infant, if born alive, should be allowed to maintain an action in the courts for injuries so wrongly committed upon its person while so in the womb of the mother."

In *Drobner* v. *Peters,* 186 *N. Y. S.* 278, the Appellate Division of the New York Supreme Court in 1921, by a vote of three to two, upheld the right to maintain such a cause of action, and in its decision collected and discussed many authorities. However, the Court of Appeals, 232 *N. Y.* 220; 133 *N. E. Rep.* 567, reversed the Appellate Division, Mr. Justice Cardozo dissenting but without opinion. Mr. Justice Pound, speaking for the Court of Appeals, said:

"Mr. Justice Holmes said in 1884, in *Dietrich* v. *Northampton,* 138 *Mass.* 14; 52 *Am. Rep.* 242, that no case, so far as he knew, had ever decided that an infant could maintain an action for injuries received in the mother's womb. The great weight of authority is still against the plaintiff's contention that the unborn child has a right of immunity from personal harm (*Allaire* v. *St. Luke's Hospital,* 184 *Ill.* 359; 56 *N. E. Rep.* 638; 48 *L. R. A.* 225; 75 *Am. St. Rep.* 176; *Walker* v. *Great Northern Railway Co.,* 28 *L. R. Ir.* 69; *Gorman* v. *Budlong,* 23 *R. I.* 169; 49 *Atl. Rep.* 704; 55 *L. R. A.* 118; 91 *Am. St. Rep.* 629; *Buel* v. *United Railways Co.,* 248 *Mo.* 126; 154 *S. W. Rep.* 71; 45 *L. R. A. (N. S.)* 625; *Ann. Cas.* 1914C, 613; *Lipps* v. *Milwaukee, &c., Co.,* 164 *Wis.* 272; 159 *N. W. Rep.* 916; *L. R. A.* 1917B, 334), although much judicial argument has been advanced to support a contrary ruling (*Nugent* v. *Brooklyn Heights Railroad Co.,* 154 *App. Div.* 667; 139 *N. Y. Supp.* 367; dissenting opinion, Boggs, J., *Allaire* v. *St. Luke's Hospital, supra; Beven on Negligence* (3d ed.) 73, 76) * * *.

"By a legal fiction or indulgence, a legal personality is imputed to an unborn child as a rule of property for all purposes beneficial to the infant after his birth (*The George & Richard, L. R.* 3 *Ad. & Ecc.* 466), but not for purposes working to his detriment (*Villar* v. *Gilbey* (1907), *A. C.* 139, 145), * * *.

"Rights of ownership of property do not connote a duty of personal care to the inchoate owner, nor does the crime of causing the death of an unborn child connote liability to the child for personal injuries. When justice or convenience requires, the child in the womb is dealt with as a human being, although physiologically it is a part of the mother, but the law has been fairly well settled during its centuries of growth against the beneficence of an artificial rule of liability for personal injuries sustained by it.

"Does the present case permit the establishment by judicial decision of the rule that the innocent infant need not bear unrequited the consequences of another's fault? In the mother's womb he had no separate existence of his own. When born he became a person. He carried the injuries out into the world with him. His full rights as a human being sprang into existence with his birth. No longer may it be urged that the mother alone is injured. The presence of the injured child refutes that theory. Did he succeed to his mother's rights?

"The modern tendency of decided cases is to ignore fictions and deal with things as they are. At common law a cause of action for personal·injuries did not survive if death resulted from another's negligence or wrongful act. Lord Campbell's act, passed in England in 1846, and followed generally in this state (*Code Civ. Proc.*, § 1905), was necessary to correct this omission. May this court attach an unnatural meaning to simple words and hold independently of statute that a cause of action for prenatal injuries is reserved to the child until the moment of its birth and then accrues? The formulation of such a principle of legal liability against precedent and practice may be a tempting task, to which sympathy and natural justice point the way; but I cannot bring myself to the conclusion that plaintiff has a cause of action at common law. The injuries were, when inflicted, injuries to the mother. No liability can arise therefrom except out of a duty disregarded, and defendant owed no duty of care to the unborn child in the present case apart from the duty to avoid injuring the mother.

"Strong reasons of public policy may be urged both for and against allowing the new right of action. The conditions of negligence law at the present time do not suggest that the reasons in favor of recovery so far outweigh those which may be advanced against it as to call for judicial legislation on the question."

This seems to answer all of the arguments so ably presented by Mr. Justice Boggs in the Allaire case, *supra*.

In the absence of statute or precedents in this state, the decisions of the appellate courts of such great states as New York, Massachusetts and Illinois are entitled to great consideration. It is to be noted that the decisions are based upon the absence of statute and generally recognize that "sympathy and natural justice" may favor the maintenance of such an action.

At common law an action could be maintained only for injuries sustained after being born alive and such cause of action did not survive the death of the injured. To provide for the survival of such cause of action after death Lord Campbell's act was enacted in England, and in this state the Death act, *R. S.* 2:47-1 (*N. J. S. A.* 2:47-1), was enacted. To provide for a new cause of action to be maintained by an infant after being born alive for injuries sustained while *en ventre sa mere,* an act of the legislature is necessary. Judicial legislation in these circumstances is improper, much as one may be tempted because of "sympathy and natural justice."

The motion to strike the fifth and sixth counts of the complaint will be granted.

An order may be presented accordingly.