## Von Elbe v. Studebaker-Packard Corp.

*Ella Graubart* and *Patterson, Crawford, Arensberg & Dunn*, for plaintiff.

*J. Lawrence McBride* and *Dickie, McCamey, Chilcote, Reif & Robinson*, for defendant.

ALPERN, J., February 14, 1958.—On June 11, 1956, plaintiff, Evelyn von Elbe, was driving an automobile owned by her husband, Guenther von Elbe, in a southerly direction on Roup Avenue in the City of Pittsburgh. At the intersection of Roup Avenue and South Negley Avenue she came to a stop behind another car, waiting to enter the intersection, when her car was struck from the rear by one owned by defendant and being operated by its employe. The collision forced plaintiff's car into the one in front of it.

Evelyn von Elbe instituted an action in trespass to recover damages for the personal injuries which she allegedly sustained in this accident. Guenther von Elbe, her husband and owner of the car, filed suit in his own right for the damage to the automobile, medical expenses incurred as a result of the injuries to his wife and loss of consortium.

At the time of the accident the wife plaintiff was pregnant. On September 11, 1956, three months after the accident, she gave birth to a daughter, Ann Elizabeth Dyson von Elbe. The child was born with an expanded heart, a collapsed lung and a clubbing of the right foot.

The original complaint in this action has been amended to include a claim by the father, on behalf of his infant daughter, Ann, for personal injuries alleged to have been sustained by her as the direct result of the accident on June 11, 1956. The father seeks to recover also for medical and other expenses already incurred and that will be incurred as the result of injuries sustained by his infant daughter.

Defendant has demurred to the complaint as amended, taking the position that the allegations of the amendment to the complaint, even if true, give the infant no cause of action.

The fundamental question before the court en banc is whether a child who suffers injury while en ventre sa mere, as the result of the negligence of another, has the right, after birth, to maintain an action for damages for the injuries received by her.

In support of its position that the child has no right of action, defendant cites the case of Berlin v. J. C. Penney Company, Inc., 339 Pa. 547. This case holds that an infant has no cause of action for injuries sustained while en ventre sa mere.

The decision was handed down by the Pennsylvania Supreme Court in 1940. The court, in support of this

conclusion, reviewed the decisions of other jurisdictions which held that such an action could not be maintained. Cases were cited from New York, Drobner v. Peters, 232 N. Y. 220; Massachusetts, Dietrich v. Northampton, 138 Mass. 14; New Jersey, Ryan v. P.S.C.T., 18 N. J. Misc. 429; Illinois, Allaire v. St. Luke's Hospital, 184 Ill. 359.

Since 1940 there has been a complete reversal of position by the courts considering this question. Two of the jurisdictions relied upon by the Pennsylvania Supreme Court in its 1940 decision, New York and Illinois, have since reversed their former holdings and now permit recovery for prenatal injuries.

The first American case recognizing such a cause of action was decided in 1946. The court held, in Bonbrest v. Kotz, 64 F. Supp. 138 (D. C. Dist. Col.) that a child was entitled to maintain an action for injuries sustained through alleged malpractice in removal from its mother's womb. In this case the court deemed important the fact that plaintiff was viable, that is, capable of living, at the time of the alleged negligent act.

The Supreme Court of Ohio, reversing its former position, held in 1949, William v. Marion Rapid Transit, 152 Ohio St. 114, that an unborn child which was viable and capable of existence independently of its mother was a "person" within the constitutional provison affording a remedy to every person for injury done him in his person.

In 1951 Maryland permitted such an action in the case of Damasiewicz v. Gorsuch, 197 Md. 417, 79 A. 2d 550. In the same year the New York Court of Appeals recognized such a cause of action in Woods v. Lancet, 303 N. Y. 349. In this case the court noted at page 351 that:

"The trend in decisions of other courts, and the writings of learned commentators, in the period since

Drobner v. Peters was handed down in 1921, is strongly toward making such a recovery possible. The precise question for us on this appeal is: shall we follow Drobner v Peters, or shall we bring the common law of this State, on this question, into accord with justice? I think, as New York State's court of last resort, we should make the law conform to right."

Illinois, in Amann v. Faidy, 415 Ill. 422, 114 N. E. 2d 412 (1953), has also changed its rule to permit recovery for prenatal injuries, reversing its holding in Allaire v. St. Luke's Hospital, supra. In this opinion, the court states its conclusion that:

". . . the reasons which have been advanced in support of the doctrine of nonliability fail to carry conviction. We hold, therefore, in conformity with the recent decisions of the courts of last resort of New York, Maryland, Georgia, Minnesota, and Ohio, and the District Court for the District of Columbia, that plaintiff, as administratrix of the estate of a viable child, who suffered prenatal injuries and was thereafter born alive, has a right of action against the defendant whose alleged negligence caused the injuries."

In the following cases Connecticut, Oregon and Delaware, respectively, have also recognized the existence of such a cause of action: Prates v. Sears, Roebuck and Company, 19 Conn. Sup. 487, 118 A. 2d 633; Mallison v. Pomeroy, 205 Ore. 690, 291 P. 2d 225 (1955); and Worgan v. Greggo & Ferrara, Inc., 50 Del. 258, 128 A. 2d 557 (1956).

While Pennsylvania in 1940 had some support for its position that an infant was not entitled to recover, this support has largely fallen away. Since 1940, when Berlin v. J. C. Penney Company, Inc., was decided by the Pennsylvania Supreme Court, the opinions of other jurisdictions have been in favor of permitting recovery for prenatal injuries.

The trend away from the rule denying recovery had its beginning in the dissent of Justice Boggs in Allaire v. St. Luke's Hospital, 184 Ill. 359 (1900), which is often quoted in support of the rule favoring recovery for the infant receiving prenatal injuries. Justice Boggs, in this notable dissent, stated that the argument that an unborn child was but part of the mother and had no separate being or existence which could be the subject of injury distinct from the mother was untenable in view of the advances of medical science. He argued that whenever a child in utero was so far advanced in prenatal age that after parturition such child could live separate from the mother there should be a right of action for any injuries wantonly or negligently inflicted upon his or her person though then in the mother's womb. Medicial knowledge, even in 1900, supported the dissenting opinion.

In what appears to be the only decided case prior to 1946 allowing such a cause of action, Montreal Tramaways v. Leveille, 4 D. L. R. 337 (1933), the court, at page 345, noted a very compelling reason for permitting such recovery:

"If a child after birth has no right of action for prenatal injuries, we have a wrong inflicted for which there is no remedy, for, although the father may be entitled to compensation for the loss he has incurred and the mother for what she has suffered, yet there is a residium of injury for which compensation cannot be had save at the suit of the child. If a right of action be denied to the child it will be compelled, without fault on its part, to go through life carrying the seal of another's fault and bearing a very heavy burden of infirmity and inconvenience without any compensation therefor."

The language of this case indicates that the court would have permitted the action for prenatal injuries regardless of the child's state of development and would

not have limited recovery, as Justice Boggs would have, in 1900, to injuries received after the child had become viable.

Another indication of the changing temper of the courts in considering this question came in 1942 in the case of Stemmer v. Kline, 128 N. J. L. 455. While on a divided court the majority found against the right of the infant to recover for prenatal injuries, the minority opinion written by Chief Justice Brogan became in time the majority view. The following excerpts from the well-considered statement of Chief Justice Brogan have frequently been quoted:

"If the common law protects the rights of the unborn child and if every intendment in the law is favorable to him, the inference is inevitable that such unborn child is a person and possesses the rights that inhere in a person even though he is incapable himself to assert them. If the unborn child may not legally be deprived of his life it is hard to understand how that life may with impunity be totally impaired by the tort of a third person."

Chief Justice Brogan reviewed the cases from other jurisdictions denying recovery, including the Pennsylvania case of Berlin v. J. C Penney, supra. The court concluded that: "The real reasons for these holdings, we think, and it is not at all concealed in some of the opinions, is a rule of convenience. There would be many cases, it is feared, that would be founded on fraud and possibly injustice might result from them; but these reasons should not weigh with the court." The opinion notes that the interval between the act and the injury has no consequence except as to its evidential value on the question of cause and effect.

"To deny the infant relief in this case is not only a harsh result, but its effect is to do reverence to an outmoded, time-worn fiction not founded on fact and

within common knowledge untrue and unjustified. . . . The life of an infant begins at the moment of conception in the mother's womb" : Woods v. Lancet, 278 App. Div. 913, 914.

This last statement leads us to a consideration of the question of viability and its effect on the decisions allowing a cause of action for prenatal injuries. It must be conceded that in many of the cases permitting recovery the facts indicated that the child was viable at the time of the injury and in others the court expressly limited its holding to situations involving viable infants. New York has, however, since Woods v. Lancet, supra, gone a step farther and, in Kelly v. Gregory, 282 App. Div. 542, 125 N. Y. S. 2d. 696 (1953), extended recovery to include nonviable injuries. In Hornbuckle v. Plantation Pipe Line Company, 212 Ga. 504, 93 S. E. 2d 727 (1956), the Georgia Supreme Court held that "if a child born after an injury sustained at any period of its prenatal life can prove the effect on it of a tort, it would have a right to recover."

The emphasis which has been placed on viability is the result of the earliest American decision on this question, Dietrich v. Northampton, 138 Mass. 14 (1884). In this case Justice Holmes assigned as a reason for holding that there was no cause of action in the infant for prenatal injuries the fact that at the time of the injury the infant was part of the mother. In effect, there was no legal personality in existence to whom a duty was owed. Justice Boggs in the dissent to the Allaire case would have allowed recovery where the injury occurred at a time when the child was viable, that is, capable of maintaining independent life separate from its mother. If the infant en ventre sa mere was at the time of the injury viable, Justice Boggs felt that it constituted an independent legal personality to whom a duty could be owed. He would,

therefore, have permitted recovery in those cases. While in 1900 it may have seemed best to restrict recovery to those cases in which the infant was viable at the time of the injury, we now know, as Chief Justice Brogan wrote in the Stemmer case:

"While it is a fact that there is a close dependence by the unborn child on the organism of the mother, it is not disputed today that the mother and the child are two separate and distinct entities; that the unborn child has its own system of circulation of the blood separate and apart from the mother; that there is no communication between the two circulation systems; that the heartbeat of the child is not in tune with that of the mother but is more rapid; that there is no dependence by the child on the mother except for sustenance . . . It is not the fact that an unborn child is part of the mother, but that rather in the unborn state it lived with the mother, we might say, and from conception on developed its own distinct, separate personality."

We conclude that a child may recover for injuries negligently caused by another though still in its mother's womb at the time of the injury, and regardless of whether such child was viable at the time.

It is the opinion of this court that Pennsylvania should join the increasing number of States which have recognized the injustice of denying recovery to an infant for prenatal injuries which are the direct result of another's negligence.

### Order

And now, to wit, February 14, 1958, after argument and submission of briefs and consideration thereof, it is ordered, adjudged and decreed that the preliminary objections filed by defendant herein be, and the same are, hereby dismissed.

Eo die, exception noted to defendant and bill sealed.