Sinkler, Appellant, v. Kneale.

Argued April 22, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*G. Clinton Fogwell, Jr.,* with him *Albert W. Laisy,* and *Reilly and Fogwell,* for appellant.

*William H. Mitman,* with him *Stively and Mitman,* for appellee.

OPINION BY MR. JUSTICE BOK, September 26, 1960:

Preliminary objections were filed and sustained to a complaint by a child, *per* her father as natural guardian, alleging that as the result of prepartum injuries she was born Mongoloid.

The suit embraces four plaintiffs—father, mother, thirteen-year-old daughter, and the Mongoloid child. The mother was driving her car with her daughter as passenger and at the time was one month pregnant with the infant plaintiff. She and the older daughter were injured when defendant's car, according to the complaint, negligently struck the mother's car in the rear.

The claims of the three older persons are pending, the Mongoloid infant being the sole appellant after her right of action was denied her.

The lower court felt bound by *Berlin v. J. C. Penney Co., Inc.,* 339 Pa. 547 (1940), 16 A. 2d 28. This is a short opinion of less than a page and relies on 4 Restatement, Torts, §869, and on four cases, each from a foreign jurisdiction: *Drobner v. Peters,* 232 N. Y. 220 (1921), 133 N.E. 567; *Dietrich v. Northampton,* 138 Mass. 14 (1884), 52 Am. Rep. 242; *Ryan v. PSCT,* 18 N. J. Misc. 429 (1940), 14 A. 2d 52; *Allaire v. St. Luke's Hosp.,* 184 Ill. 359 (1900), 56 N.E. 638.

The *Berlin* case was the first appellate expression in Pennsylvania on the subject of injury sustained *en ventra sa mère* but there have been four lower court decisions, one before and three after *Berlin*: *Kine v. Zuckerman,* 4 Pa. D. & C. 227 (1924); *Jacketti v. Pottstown Rapid Transit Co.,* 67 Montg. Co. 37 (1950); *Rimpa v. Sears Roebuck & Co.,* 37 Erie 267 (1953); and *VonElbe v. Studebaker-Packard Corp.,* 15 Pa. D. & C. 2d 635 (1958). The *Kine* and *VonElbe* cases upheld the right of action, while the *Jacketti* and *Rimpa* cases followed *Berlin,* although in *Rimpa* the court said that it would in all likelihood have taken the other view if the question had been open.

By now all four jurisdictions on which *Berlin* relied have reversed themselves and at present uphold the right of action when the child is born alive: *Woods v. Lancet,* 303 N. Y. 349 (1951), 102 N.E. 2d 691; *Amann v. Faidy,* 415 Ill. 422 (1953), 114 N.E. 2d 412; *Smith v. Brennan and Galbraith,* 31 N. J. 353 (1960), 157 A. 2d 497; and *Keyes v. Construction Service, Inc.,* Mass. , 165 N.E. 2d 912 (1960).

The parent case, both in this country and in England, is the Massachusetts decision first above cited, *Dietrich v. Northampton,* where Judge HOLMES in 1884 denied the right of action. He not only found no common law doctrine against it but felt it necessary to find some opposition to a statement by Lord Coke in

the criminal law which is repeated by IV Blackstone's Commentaries, p. 198: "To kill a child in its mother's womb is now no murder, but a great misprision: but if the child be born alive and dieth by reason of the portion or bruises it received in the womb, it is murder in such as administered or gave them."

Even if the criminal law is faint authority for a tort, the foregoing must show at least that the common law offers no bar to the suit. Judge HOLMES' real point d'appui for decision was that the unborn child was part of its mother. This was undoubtedly the medical view accepted by the law at the time, and it is precisely the view that has altered since.

The case has been effectively overruled by *Keyes v. Construction Service, Inc.,* supra, decided April 4, 1960, where the Supreme Judicial Court of Massachusetts said: "We think it advisable that in respect to the subject of prenatal injury the law of this Commonwealth should be in general in harmony with that of the large and growing proportion of the other States. . . . There is no need to reverse the Dietrich decision which doubtless was right when rendered but we recognize that in view of modern precedent its application should be limited to cases where the facts are essentially the same."

The facts in *Dietrich* were that the child was born prematurely, after four to five months from conception, when its mother fell on a defective highway and miscarried.

The case of *Smith v. Brennan & Galbraith,* supra (31 N. J. 353), decided January 11, 1960, is a compendium of the present stance of the law. Before 1949 twelve states, including Pennsylvania and the four whose cases are cited above in *Berlin,* denied the right of action, and two upheld it: California, under a statute, and Louisiana, under its civil code. Since 1949

seven states have overruled former decisions denying recovery, including the four above cited in *Berlin,* and nine states, dealing with the question for the first time, have upheld recovery. The eighteen states that now allow recovery are: California, *Scott v. McPheeters,* 33 Cal. App. 2d 629, 92 P. 2d 678 (1939); Connecticut, *Prates v. Sears, Roebuck & Co.,* 19 Conn. Sup. 487, 118 A. 2d 633 (1955); Delaware, *Worgan v. Greggo & Ferrara, Inc.,* 50 Del. 258, 128 A. 2d 557 (1956); Georgia, *Tucker v. Carmichael & Sons,* 208 Ga. 201, 65 S.E. 2d 909 (1951); Illinois, *Amann v. Faidy,* 415 Ill. 422, 114 N.E. 2d 412 (1953); Kentucky, *Mitchell v. Couch,* 285 S.W. 2d 901 (Ky. Ct. App., 1955); Louisiana, *Cooper v. Blanck,* 39 So. 2d 352 (La. App., 1923); Maryland, *Damasiewicz v. Gorsuch,* 197 Md. 417, 79 A. 2d 550 (1951); Massachusetts, *Keyes v. Construction Service, Inc.,* Mass. , 165 N.E. 2d 912 (1960); Minnesota, *Verkennes v. Cornica,* 38 N.W. 2d 838 (1949); Mississippi, *Rainey v. Horn,* 221 Miss. 269, 72 So. 2d 434 (1954); Missouri, *Steggall v. Morris,* 363 Mo. 1224, 258 S.W. 2d 577 (1953); New Hampshire, *Poliquin v. MacDonald,* 101 N. H. 104, 135 A. 2d 249 (1957); New Jersey, *Smith v. Brennan & Galbraith,* 31 N. J. 353, 157 A. 2d 497 (1960); New York, *Woods v. Lancet,* 303 N. Y. 349, 102 N.E. 2d 691 (1951); Ohio, *Williams v. Marion Rapid Transit, Inc.,* 152 Ohio St. 114, 87 N.E. 2d 334 (1949); Oregon, *Mallison v. Pomeroy,* 205 Ore. 690, 291 P. 2d 225 (1955); South Carolina, *Hall v. Murphy,* S. C. , 113 S.E. 2d 790 (1960).

At present eight states deny recovery. In two the courts note the recent trend and strongly indicate that reversal is likely. These are Michigan, in *LaBlue v. Specker,* 358 Mich. 558, 100 N.W. 2d 445 (1960), and Wisconsin, in *Puhl v. Milwaukee Auto Ins. Co.,* 8 Wis. 2d 343, 99 N.W. 2d 163 (1960). In two other

of these states the courts expressly said that they made no determination of the rights of a child born alive. These are Nebraska, in *Drabbels v. Skelly Oil Co.,* 155 Neb. 17, 50 N.W. 2d 229 (1951), and Oklahoma, in *Howell v. Rushing,* 261 P. 2d 217 (Okla. Sup. Ct., 1953).

The remaining four states, denying recovery, are: Alabama, *Stanford v. St. Louis-San Francisco R. Co.,* 214 Ala. 611, 108 So. 566 (1926); Rhode Island, *Gorman v. Budlong,* 23 R. I. 169, 49 Atl. 704 (1901); Tennessee, *Hogan v. McDaniel,* 319 S.W. 2d 221 (Tenn. Sup. Ct., 1958); Texas, *Magnolia Coca Cola Bottling Co. v. Jordan,* 124 Texas 347, 78 S.W. 2d 944 (1935).

Leading text writers have condemned the rule and advocated recovery: Prosser, Torts (2d ed. 1955), §36, pp. 174-75; 2 Harper & James, Torts (1956), §18.3. And see White, The Right of Recovery for Prenatal Injuries, 12 La. L. Rev. 383 (1952); Note, 36 Va. L. Rev. 611 (1950); Note, 48 Mich. L. Rev. 539 (1950); Note, 63 Harv. L. Rev. 173 (1949); Note, 35 Cornell L. Q. 648 (1950); Annotation, 10 A.L.R. 2d 1059, at 1071 (1950), and 27 A.L.R. 2d 1256 (1953). Prosser says that the trend toward allowing recovery "is so definite and marked as to leave no doubt that this will be the law of the future in the United States."

The real catalyst of the problem is the current state of medical knowledge on the point of the separate existence of a foetus. In the *Smith* case Justice Proctor, speaking for the New Jersey Supreme Court in a unanimous decision said this: "The third reason for the rule denying recovery was the theory that an unborn child was a part of the mother, and therefore not a person in being to whom a duty of care could be owed. All the courts that have permitted recovery for prenatal injuries have disagreed with that theory. They have found that the existence of an infant sepa-

rate from its mother begins before birth, . . . Medical authorities have long recognized that a child is in existence from the moment of conception, and not merely a part of its mother's body. See 1 Beck, Medical Jurisprudence, 277 (11th ed. 1860); Herzog, Medical Jurisprudence, 683 et seq. (1931); Corner, Ourselves Unborn, 69 (1944); Patten, Human Embryology, 181 (1946); Maloy, Legal Anatomy and Surgery, 716 et seq. (2d ed. 1955)."

And in his dissenting opinion in *Stemmer v. Kline,* 128 N. J. L. 455 (E. & A. 1942), which was the case overruled by *Smith v. Brennan,* Chief Justice BROGAN said: "While it is a fact that there is a close dependence by the unborn child on the organism of the mother, it is not disputed today that the mother and the child are two separate and distinct entities; that the unborn child has its own system of circulation of the blood separate and apart from the mother; that there is no communication between the two circulation systems; that the heart beat of the child is not in tune with that of the mother but is more rapid; that there is no dependence by the child on the mother except for sustenance. It might be remarked here that even after birth the child depends for sustenance upon the mother or upon a third party. It is not the fact that an unborn child is part of the mother, but that rather in the unborn state it lived with the mother, we might say, and from conception on developed its own distinct, separate personality."

As for the notion that the child must have been viable when the injuries were received, which has claimed the attention of several of the states, we regard it as having little to do with the basic right to recover, when the foetus is regarded as having existence as a separate creature from the moment of conception. Even Judge HOLMES said, in *Dietrich* that

"the argument would not be affected by the degree of maturity reached by the embryo at the moment of the organic lesion or wrongful act." The question is primarily one of causation, and since medical proof of that is necessary, we now remove the bars from it *in limine*.

The order is reversed and the record remanded with a procedendo.

--------

DISSENTING OPINION BY MR. JUSTICE BELL:

The question involved is an important but very narrow one. May a child recover in tort for an alleged prenatal injury one month after she was conceived, which allegedly caused her to be born a Mongoloid?

Plaintiffs filed a complaint containing four counts.* In the third count, Rebecca, a Mongoloid daughter, born November 11, 1958, sued defendant, alleging (a) he negligently ran into the rear of her mother's automobile, and (b) that at the time of the accident plaintiff's mother was one month pregnant with plaintiff and (c) "as a result of the accident plaintiff was born a Mongoloid child." Plaintiff claimed $100,000 for the pain, suffering and humiliation, as well as for

--------

* In the first count plaintiff Nancy D. Sinkler claimed in her own right $100,000 damages for lacerations and contusions and shock to her nervous system which resulted in the birth of a Mongoloid child, Rebecca, as well as for repairs to her 1952 Chevrolet coupe. In the second count Emilie, daughter of plaintiffs Charles Sinkler and Nancy D. Sinkler, who was a passenger in her mother's automobile, claimed damages for lacerations and contusions, as well as shock to her nervous system. In the fourth count the father of the minors claimed damages in the sum of $100,000 for money which he spent or may be obliged to spend in the future for medicine, X-ray, nursing and hospital care.

medical expenses and loss of earnings and earning power.

The lower Court sustained preliminary objections to plaintiffs' complaint and entered judgment in favor of defendant, holding that Rebecca had no legal cause of action. From that judgment Rebecca has appealed.

The question raised in this appeal was clearly, expressly and specifically answered—adversely to plaintiff—in *Berlin v. J. C. Penney Company, Inc.*, 339 Pa. 547, 16 A. 2d 28 (1940). In that case the learned Chief Justice SCHAFFER, speaking for a unanimous Court, said (page 548): "The question here involved is whether an infant can maintain an action for injuries sustained while en ventre sa mere. The court below held that he could not. . . .

"At *early common law** the mother and child until birth were considered as one, the child was not deemed to have an existence independent of the parent.** As a result, an injury to an unborn child was looked upon as an injury to the mother. It is true that the unity of mother and child has been relaxed in modern times and that today for some beneficial purposes a child en ventre sa mere is considered as born. *However, there is no warrant for holding,* independent of a statute, *that a cause of action for prenatal injuries to a child accrues at birth*: 4 Restatement, Torts, §869." With this statement as to unintentional prenatal injuries, I wholeheartedly agree.

The Restatement in §869 is as follows: "A person who negligently causes harm to an unborn child is *not* liable to such child for the harm. A person desig-

---

\* Italics throughout, ours.

\*\* We note, parenthetically, that for centuries before the medical profession decided this question, the Church debated it in a slightly different form—has an unborn child a soul, and, if so, when?

nated by statute to maintain an action for causing death can not maintain an action for a negligent act committed before the birth of a child which causes the death of the child either before or after birth."

"Comment: a. The rule stated in this Section is applicable only to unintended harms to the mother or to the child. It prevents recovery by the child after its birth for any of the consequences of negligent conduct before birth. . . ."

The *Berlin v. J. C. Penney Company, Inc.* decision is supported (a) by stare decisis, (b) as well as by the Restatement and (c) we believe by the better reasoning, and should not be overruled. It is a fairly recent decision (1940) and has been unquestioned in this Court for the last 20 years. Justice Bok has stated the number of jurisdictions which allow recovery either by decision or statute for *some** prenatal injuries. There is no doubt that this is the modern trend. Pennsylvania has always considered that the decision of a Court of a sister state is entitled to weight but we make and follow our own decisions.

*The record does not show,* nor have we been informed of any development in modern medicine *in the last 20 years* which would justify any change in our decisional law. The majority opinion has gone outside the record to state that medical opinion has altered since the leading case of *Dietrich v. Northampton,* 138 Mass. 14 (1884) and "the real catalyst of the

---

* For example, New York holds an unborn child is viable after 28 weeks; Pennsylvania after 16 weeks; Michigan allows a baby en ventre sa mere to bring suit for the loss of its father (*La Blue v. Specker,* 358 Mich. 558 (1960)); three States allow a child to bring suit for prenatal injuries suffered at any time after it was conceived (*Hornbuckle v. Plantation Pipe Line Co.,* 212 Ga. 504; *Bennett v. Hymers,* 101 N. H. 183; *Kelly v. Gregory,* 282 App. Div. N. Y. 542).

problem is the current state of medical knowledge on the point of the separate existence of a foetus". In my judgment that is not the real and certainly it is not the sole important question. I regret that the majority did not conduct its off-the-record study further to determine (1) whether medical knowledge and science has changed on the point here involved in the last 20 years, and (2) whether trauma can cause an unborn child to become a Mongoloid. If such a study had been made, the majority would have discovered (1) that there has been no change on this point in medical knowledge and science in the last 20 years, and (2) that leading medical authorities are agreed (a) that a Mongoloid child is a Mongoloid from the time of its conception and results from the genes of the parents, and (b) that trauma cannot cause a child to become or be born a Mongoloid.*

There are additional reasons to support this dissenting opinion, although none are necessary. The next step will be the allowance of a suit by a baby against its mother and/or father (either directly or by joinder as an additional defendant) for shock to its nervous system or an allergy or feeble-mindedness or a malformation and for every conceivable defect or disease as the alleged result of negligently or recklessly driving an automobile (as the young frequently do), or against its mother for nervousness, shock and every imaginable injury or disease resulting from her playing golf or going surf bathing until shortly (often one week, occasionally one day) before its birth, or eating a bad oyster or deleterious or poisoned food. The next step will be recoveries against restaurants or clubs for serving its mother bad or poisoned food, or against its mother's obstetrician or doctor for failing to properly

---

* In addition to leading medical authorities, see *Puhl v. Milwaukee Automobile Insurance Co.*, 8 Wis. 2d 343 (1960).

or prudently take care of the unborn child and/or failure to use due care in advising its mother on the subject of prenatal care.

Negligence cases are swamping our Courts; families are drawing farther and farther apart—why create and greatly increase litigation and give new causes for family discord? Furthermore, in claims for shock, nervous disorders, allergies, malformations, feeble-mindedness and many other real or imaginary injuries or illnesses, whether the alleged negligence of the defendant was the *proximate* cause of the prenatal injury, or illness or mental or physical defect, or what the physical, mental or nervous condition of the child was at the time of the accident and while en ventre sa mere, would, in most instances, amount to sheer speculation. To allow such a recovery will not only create and greatly increase litigation but will open wide the door to conjectural and fictitious claims.

For each and all of these reasons, I dissent.