## Kang v. Ferry

*Steven D. Berger* and *Stanton Dubin,* for plaintiffs.

*Hugh J. Hutchinson,* for defendant.

KATZ, *J.,* January 18, 1990 — Plaintiffs, Miheui L. Kang and Yoonho H. Kang, brought suit against defendant, Charles E. Ferry, for injuries sustained by Mrs. Kang in a rear-end auto collision which occurred on November 2, 1987. At the time of the accident Mrs. Kang was almost seven weeks pregnant. She alleges that as a result of the accident her pregnancy was involuntarily terminated. Therefore, the Kangs have also brought suit on behalf of the estate of Baby Kang.

Defendant Ferry filed preliminary objections to the complaint, demurring to counts 3 and 4, which allege a cause of action on behalf of Baby Kang. In an order dated January 18, 1990, we overruled defendant's demurrer. This opinion explains our decision.

We start by restating the standard to be applied in reviewing preliminary objections in the nature of a demurrer.

"A preliminary objection in the nature of a demurrer 'admits all relevant facts sufficiently pleaded in the complaint, and all inferences fairly deducible therefrom, but not conclusions of law or unjustified inferences.' *DeSantis v. Swigart,* 296 Pa. Super. 283, 286, 442 A.2d 770, 772 (1982). Preliminary objections can properly be sustained and a complaint dismissed only in cases that are clear and free from doubt. Any doubt must be resolved against the moving party. Only where it appears with certainty that, upon the facts averred, the law will not permit recovery can the complaint be dismissed and summary judgment entered for the defendant. *Bickell v. Stein,* 291 Pa. Super. 145, 149, 435 A.2d 610, 612 (1981), quoting *Donnelly v. DeBourke,* 280 Pa. Super. 486, 489-90, 421 A.2d 826, 828 (1980) (overruled on other grounds)." *Aetna Electroplating Co. v. Jenkins,* 335 Pa. Super. 283, 285, 484 A.2d 134, 135 (1984).

Defendant's demurrer is premised on the argument that an action under the Wrongful Death and Survival Acts, 42 Pa.C.S. §§8301, 8302 may not be maintained on behalf of a seven-week-old, non-viable fetus.

Both parties cite to the leading case in the area of fetal injury in Pennsylvania, *Amadio v. Levin,* 509 Pa. 199, 501 A.2d 1085 (1985).

In *Amadio,* the parents of a stillborn child brought

suit under the Wrongful Death and Survival Acts on behalf of the child. The trial court sustained a demurrer by the defendants on the grounds that a "live birth" was a prerequisite to maintaining a cause of action. The court in *Scott v. Kopp*, 494 Pa. 487, 431 A.2d 959 (1981); *Marko v. Philadelphia Transportation Company*, 420 Pa. 124, 216 A.2d 502 (1966); and *Carroll v. Skloff*, 415 Pa. 47, 202 A.2d 9 (1964) had imposed the requirement that, in order to bring a survival action on behalf of a child who had allegedly been injured in the womb, the child must be born alive. Since the Amadio's child was stillborn, the lower court sustained the defendant's demurrer. 509 Pa. 199, 202, 501 A.2d 1085, 1086.

The Supreme Court reversed in *Amadio,* holding that a live birth, as required under *Scott, Marko* and *Carroll,* was no longer a prerequisite to bringing an action on behalf of a fetus for injuries sustained in the womb. 509 Pa. at 203, 501 A.2d at 1086-7. It is the scope of *Amadio* that is in dispute in this case.[1]

Specifically, the parties disagree whether *Amadio* applies in all cases of fetal injury in the womb or only in cases where a fetus carried to term is stillborn. Unfortunately, the lead opinion in *Amadio* is far from clear in explaining the court's position.

The court first characterizes the issue to be decided as follows:

"[W]hether a right of recovery exists under our Wrongful Death Act and Survival Statute on behalf of a stillborn[2] child who died as a result of injuries

---

1. *Amadio* was decided by a 4-3 vote. Justice Papadakos wrote the lead opinion which was joined by Justices Larsen, McDermott and Zappala. Justice Zappala wrote a lengthy concurrence, joined by Justice McDermott. Chief Justice Nix dissented in an opinion joined by Justice Hutchinson. Justice Flaherty dissented separately.

2. Nowhere in *Amadio* does the court define the term "stillborn." Webster's New Collegiate Dictionary defines it as: "1: dead at birth

received *en ventre sa mere.*[3] *Amadio* at 201, 501 A.2d at 1085.

The court then described Jennifer Amadio as a "full-term unborn child" who was "born stillborn" and that "At delivery, Jennifer was a fully matured and perfectly proportioned seven-pound-eight-ounce female." *Id.* at 201, 501 A.2d at 1085.

The court then reviewed its rulings in *Scott, Marko* and *Carroll, supra.* The court explained the five reasons cited for limiting the wrongful death and survival actions to those cases where there was a live birth:

(1) The court assumed that the real objective of such suits was to compensate the parents for their emotional distress for the loss of the child. Allowing a cause of action for the estate of the child would only duplicate recovery;

(2) The court refused to acknowledge a stillborn child was an "individual" under the wrongful death or survival statutes, thus no derivative action could be brought on the stillborn child's behalf;

(3) The court noted difficult causation and damages issues;

(4) At the time *Marko* and *Carroll* were decided, only seven other jurisdictions allowed these actions;

(5) Since only children born alive could take property by descent under the Intestacy Laws, the court assumed the legislature intended to limit other causes of action to those cases where the child was recognized by the Intestacy Laws.

---

... 2: failing from the start. ... " Black's Law Dictionary (5th ed.) defines "stillborn child" as "a child born dead or in such an early state of pregnancy as to be incapable of living, though not actually dead at the time of birth."

3. *En ventre sa mere* is a French term defined in Black's as "In its mother's womb. A term descriptive of an unborn child. For some purposes the law regards an infant *en ventre* as in being."

The court then stated the appellant's request:

"Appellants urge us to abandon these prior decisions requiring survival at birth in order to maintain an action for fatal injuries caused *en ventre sa mere,* and to adopt the majority view that requires only that the death-dealing injuries occur when the child is *viable en ventre sa mere." Id.* at 203, 501 A.2d at 1086. (emphasis supplied)

In the very next sentence, the court writes:

"[W]e conclude that the time has arrived for us to join our 28 sister states and the District of Columbia and recognize that survival and wrongful death actions lie by the estates of stillborn children for fatal injuries they received while viable children *en ventre sa mere." Id.* at 203, 501 A.2d 1086-7.

This is the first statement of the court's holding in the case. Unfortunately, the court later restates the holding in materially different language. Indeed, in footnote 3 to the opinion, the court writes:

"Today, we join the following 29 other jurisdictions that hold that actions lie by the estate of stillborn children for wrongful death incurred while they were *en ventre sa mere." Id.*

It is worth noting that in cases cited in the footnote, courts in sister states differ materially in the *scope* of the cause of action for injuries suffered by a child *en ventre sa mere.* Most courts expressly limit a cause of action to *viable* fetuses. We have, however, found two decisions, *Presley v. Newport Hospital,* 117 R.I. 177, 365 A.2d 748 (1976) and *Porter v. Lassiter,* 91 Ga. App. 712, 87 S.E.2d 100 (1955), which reject viability as a limitation on this cause of action. This split in opinion, we believe, supports our conclusion that the court in *Amadio* did not clearly manifest an intent to limit this cause of action to viable fetuses. Indeed the court never

explores the differences between the majority view and the *Presley* and *Porter* cases.

The court next discusses *Sinkler v. Kneale,* 401 Pa. 267, 164 A.2d 93 (1960):

"We have . . . recognized that a child *en ventre sa mere* is a separate individual from the moment of conception, and have permitted that child to sue for injuries received during gestation when the child is born alive. Implicit in our holding in *Sinkler* is the acknowledgment that a child *en ventre sa mere* is an individual with the right to be free of prenatal injury. If a child *en ventre sa mere* is an individual at the time of its injury, then a fortiori, the child is also an individual when those injuries cause its death, and it makes no difference in liability under the wrongful death and survival statutes whether the child dies of the injuries just prior to or just after birth." *Id.* at 204, 501 A.2d at 1087.

The court went on further:

"We acknowledge a child *en ventre sa mere* to be an 'individual,' having existence as a separate creature from the moment of conception." *Id.*

The court next cites Justice Larsen's dissent in *Scott v. Kopp, supra.* In that dissent, Justice Larsen argued against extension of the "live-birth" rule and urged elimination of all attempts at "arbitrary line-drawing" as either live birth or viability in deciding whether a cause of action exists on behalf of a fetus injured in the womb. Instead, the parties should be permitted to present evidence in support of their contentions. This approach is the one adopted by the majority in *Amadio. Id.,* citing 494 Pa. 487, 496, 431 A.2d 959, 964.

Finally, the court summarizes its holding as follows:

"In summary, today we reverse our prior holdings in *Scott v. Kopp,* 404 Pa. 487, 431 A.2d 959 (1981); *Marko v. Philadelphia Transportation Company,*

420 Pa. 124, 216 A.2d 502 (1966); *Carroll v. Skloff,* 415 Pa. 47, 202 A.2d 9 (1964), and extend to the estate of a child born dead the right to institute a survival and wrongful death action for death-dealing injuries suffered while *en ventre sa mere.*"[4] *Id.* at 208, 501 A.2d 1085, 1089.

Thus, upon our review of the majority opinion in *Amadio,* we believe it is an open question as to whether viability of the fetus at the time of injury and/or at the time of death is essential to permitting the parents to recover for the infant's death. Thus, we believe defendant's argument that *Amadio* applies only to viable fetuses is misplaced.

The court's holding in *Amadio* is ambiguous. On two occasions, the court limits recovery to those cases where the injury and/or death (it is unclear which) occurs when the fetus is viable. The court, in support of its holding, cites two cases from other states, but the court never resolves the conflict contained in those cases over whether viability is in fact a dividing line in these cases.

Then the court cites *Sinkler v. Kneale, supra,* which holds that a fetus is an "individual" with a right to be free from injury from the moment of conception[5] and refers approvingly to Justice Larsen's dissent in *Scott v. Kopp, supra,* which specifi-

---

4. Justice Zappala's concurrence stated he was "not satisfied to overrule . . . *Scott v. Kopp,*" *supra.* He expressly relied on *Sinkler v. Kneale, supra,* to support his view that "the cause of action for prenatal injuries . . . accrues to the child upon the occurrence of the injuries without regard to the later live birth of the child." *Id.* at 221, 501 A.2d at 1096. There is no discussion of any requirement of viability in the concurrence; however, this is not surprising, given the reliance on *Sinkler, supra.*

5. We offer no opinion on the soundness of such a holding in light of *Webster v. Reproductive Health Services,* 109 S.Ct. 3040 (1989) and *Roe v. Wade,* 410 U.S. 113 (1973). See also, *Presley v. Newport Hospital, supra.*

cally disapproves of "arbitrary line drawing" at points such as viability in deciding whether a cause of action exists.

Finally, when the court summarizes its holding, it does not mention viability of fetus as a requirement. Thus, we think the *Amadio* can be read so as to permit the cause of action on behalf of the estate of Baby Kang in this case. It is *not* clear as a matter of law that no recovery is possible and thus, defendant's demurrer was properly overruled.

## ORDER

And now, January 18, 1990, an order dated January 2, 1990 in the above-captioned matter is vacated and amended as follows:

And now, this January 18, 1990, upon consideration of the preliminary objections of defendant, Charles E. Ferry, to plaintiffs' amended complaint and plaintiffs' responses thereto, it is hereby ordered and decreed that defendant's preliminary objections are overruled in part and sustained in part. Defendant's preliminary objections in the nature of a demurrer are overruled. Defendant's preliminary objections to strike paragraphs 6(h) and 6(i) of the complaint pursuant to Pa.R.C.P. 1017(b)(2) and 1019 are sustained.